## STATE *v.* SOL. RICKETTS.

The rule that a prisoner on trial for perjury can be convicted only upon the testimony of two witnesses, or of one witness supported by corroborating circumstances, does not affect the *competency* of a witness to the alleged perjury. But if at the close of the case for the prosecution, there be no other witness to the alleged perjury, and no corroborating circumstances, the court will direct a verdict of acquittal.

The court below does not err in refusing to rule out the admissions of the defendant on the ground that they were obtained by undue influence, where it appears by the examination, preliminary to the admission of such evidence, that no such influence was used.

The declarations of the defendant made after the commission of the alleged offence are not competent evidence in his favor, unless they become a part of the *res gestæ.*

In this State, in general, every act may be lawfully done on Sunday, which may lawfully be done on any other day, unless there be some statute to the contrary. Receiving the verdict of a jury on Sunday is not forbidden by any statute of this State, and is therefore a lawful and valid act:

(*Bland* v. *Whitfield,* 1 Jones 122; *State* v. *Williams,* 4 Ired. 400; *Sloan* v. *Wil'iford,* 3 Ired. 307, cited and approved; *Bullinger* v. *Marshall,* 70 N. C. Rep. cited, distinguished from this and approved.)

BYNUM, J. and SETTLE, J., *dissenting.*

INDICTMENT for *Perjury,* tried betore *Buxton J.* at Fall Term, 1875, of RICHMOND Superior Court.

The indictment was found at Spring Term, 1875 of Anson Superior Court, and upon affidavit removed to Richmond county.

The perjury was alleged to have been committed by the prisoner while testifying as a witness upon the trial of the issues in a divorce suit, tried at Anson Superior Court at Fall Term, 1874, to-wit: Martin V. Horne *v.* Mary E. Horne. The petitioner in that case alleged adultery against his wife as ground for the application, and the defendant in her answer alleged adultery against the petitioner, charging him with

having committed adultery with one Fanny Horne, a colored woman.

The defendant, a colored person, was a witness for the defendant in the suit. The perjury assigned is that the defendant swore that he saw the said Martin V. Horne at the house where Fanny Horne was; that he went in and saw Martin V. Horne in bed with Fanny Horne, with his clothes off.

Upon the trial John C. McLaughlin testified on the part of the State: "I am Clerk of Anson Superior Court and administered the oath to Sol Ricketts in the usual form, as a witness at Fall Term, 1874, on the trial of the case Martin V. Horne *v.* Mary E. Horne. I suppose I heard the whole of Sol's evidence. The substance was that about the time the Federal troops passed through the county of Anson he was flying around Fanny Horne, and on one occasion he went to Fanny's house and saw Martin V. Horne there, in bed with Fannie Horne, with his clothes off. That there was no one else in the house except some little children of Fanny's."

As the prisoner's counsel were about to examine the witness, the Solicitor moved the court that all the witnesses on both sides except the witness on the stand be separated and required to leave the court room. The motion was allowed by the court after objection by the prisoner that the motion ought to have been made before any part of the evidence was received by the court, and came too late after a State's witness was partially examined. The witnesses were all sworn and sent out of the court room. The prisoner excepted.

The Solicitor proposed to examine Martin V. Horne who is the prosecutor and also the husband of Mary E. Horne. The competency of this witness was objected to by the prisoner. The objection was overruled and the witness testified:

"I was present at the trial of the divorce suit in which I was plaintiff and heard Sol. Rickett's testify that he saw me

stripped off in bed with Fanny Horne in 1865. This was not so. I never was in bed with Fanny in my life."

To the ruling of his Honor admitting the testimony of Martin V. Horne the prisoner excepted.

The Solicitor proposed to prove by one William C. Threadgill, that two or three weeks after the trial of the divorce suit he heard the prisoner say " that he never saw what he had said in court he had seen, that he had said so to please some folks." The prisoner objected on the ground that the confession was obtained by improper influence exerted by Threadgill. The preliminary evidence was as follows: Sol Ricketts was my hired servant, he had been staying with me two years about the jail. I am the jailor of Anson county. I had given him a coat that morning, also a drink. I gave him a drink every morning. It was one half of his rations. I furnished him with clothing. I had it to do. That morning Sol said to me, " Mars William, Mars Martin is mad with me about that court house business." I replied " Sol, that was pretty heavy, wasn't it." This was two or three weeks after the trial of the divorce suit. Sol was not then under arrest. I am not positive whether he had been threatened with prosecution or not. I and Martin V. Horne are intimate and Sol knew it. I don't think I held out any inducement.

The Solicitor contended that the evidence was admissible. The counsel for the prisoner again objected. The court overruled the objection and the prisoner excepted. The witness then testified as follows: "Sol. then said he never saw what he had said in the court house he had seen. That he had said so to please some folks, or the old folks. I forget which expression he used, 'some folks' or 'old folks.' He used to belong to the Ricketts, the parents of Mary E. Horne. The morning he told me this I gave him a coat. My doing so had nothing to do with what he told me. He said he was afraid to go up town, that Martin was mad with him."

The defendant introduced as a witness one Enniss Edwards, who testified as follows:

"About two weeks after the trial of the divorce suit, I and Sol. Ricketts were sitting on the store steps of Mr. Huntley, in Wadesboro, talking together of going off to work. Martin V. Horne and William C. Threadgill came along and called Sol. off, and spoke to him. I was out of hearing and did not hear what was said. Another man, named Threadgill, came along and he and William C. Threadgill and Martin V. Horne went into a grocery, and I called Sol. back to me."

Here the prisoner's counsel proposed to prove that Sol. Ricketts, when he came back to the witness, informed him that he had told William C. Threadgill and Martin V. Horne what he had testified to on the trial was true. The counsel of the prisoner contended that this was competent as corroboratory of the truth of the prisoner's evidence.

The court excluded the evidence because the statement was not made by the prisoner to the witness in the hearing of the prosecutor, and because it was made after the trial upon which the perjury was alleged to have been committed, and so came within the general rule excluding declarations of the accused after the fact.

The defendant again excepted.

The trial occurred on Saturday of the first week of the term, and was protracted into the night. The jury retired about 10 o'clock. Before leaving the bench, his Honor inquired of the counsel on both sides if they were content that the Clerk should take the verdict. They both replied "yes." His Honor then left the courthouse. The jury remained all night and rendered a verdict of "guilty," at 8 o'clock on Sunday morning. The Clerk recorded the verdict and discharged the jury. On Monday the verdict was read to the Judge as a part of the minutes.

The prisoner excepts, because the verdict was rendered to the court on the Sabbath day.

The prisoner moved the court for a new trial on account of error as alleged in the foregoing exceptions. The motion was overruled by the court. The prisoner then moved in arrest of judgment for error in receiving the verdict.

The motion was overruled. Judgment and appeal by the prisoner.

*Walker*, for the prisoner.

*Attorney General Hargrove*, with whom was *Smith & Strong*, for the State.

RODMAN, J. We will examine the exceptions of the defendant in their order.

1. This was properly abandoned.

2. Martin Horne was a party to the divorce suit in which the alleged perjury was committed. He was allowed to testify to what the defendant had sworn on the trial of that action in respect to an occurrence between him (Martin) and one Fanny Horne, and that the defendant therein swore falsely. The defendant contends that the witness (Martin) was incompetent because of the rule that a prisoner on trial for perjury can be convicted only on the testimony of two witnesses, or of one witness supported by corroborating circumstances. The rule is admitted, but it does not affect the competency of the witness in question. He was one witness to the alleged perjury, and if at the close of the case for the prosecution there had been no other witness to the same effect and no competent evidence of corroborating circumstances, the court would have directed a verdict of acquittal.

3. The corroborating circumstances relied on were the admissions of the defendant to Threadgill, that he had sworn falsely on the trial of the divorce suit. The defendant objected to the admission of this evidence, on the ground that the admissions were procured by undue influence. The

Judge held that the evidence did not show that they were so procured or made. We concur with the Judge.

4. The Judge excluded the evidence of one Edwards, by whom the defendant proposed to prove that about two weeks after the trial of the divorce suit the defendant told him that what he had sworn to on the trial was true. Defendant excepted.

The case of *Lullinger* v. *Marshall*, 70 N. C. Rep., 520, cited by defendant's counsel, does not sustain his exception. That a person who has sworn to a fact, in court, afterwards re-asserts it, has no tendency to prove that what he swore to was true. He would be just as likely to do so if it were consciously false, as if it were true.

5. The defendant contends that the judgment is void because the verdict was rendered on Sunday, the case having been tried and given to the jury on the preceding day. He mainly relies on this exception. What religion or morality permit or forbid to be done on Sunday, is not within our province to inquire. In different christian countries, and in different ages in the same country, very differing opinions have prevailed upon this question. In this State in general every act may lawfully be done on Sunday, which may lawfully be done on any other day, unless there be some act of the Legislature forbidding it to be done on that day. This is the principle on which the cases of *Bland* v. *Whitfield*, 1 Jones 122 *State* v. *Williams*, 4 Ire., 400, were decided. In the first case, a levy on personal property made on Sunday was held void, not because it was void at common law, or upon the idea that the day ought, upon religious or moral doctrines, to be kept holy, but because a statute made the execution of process on that day unlawful. In the latter case, the court, while condemning the conduct of the defendant in requiring his slaves to work on Sunday as immoral and reprehensible, held that no indictment could be sustained against him, because the act was not

an offence at common law, and had not been made so by statute. Sunday is frequently called "*dies non juridicus.*" *McNally's case*, 9 Co. Rep., 66, b, 3 Thomas Coke, 354 and note 3. But this means only that process cannot ordinarily issue or be executed or returned, and that courts do not usually sit on that day. It does not mean that *no* judicial action can be had on that day. On the contrary, it is laid down in books of authority, that warrants for treason, felony and breach of the peace, may be issued and executed on that day. I do not doubt that if the circumstances made it proper, a coroner and his jury might lawfully hold an inquest of homicide on that day, although I have no authority for the opinion. So I think that a magistrate might, upon that day, hear the case of a prisoner brought before him on a criminal charge, and admit him to bail or refuse it. "The Sabbath was made for man." All religious and moral codes permit works of necessity and charity on their sacred days. The instances mentioned come as fully within that description as many acts which are habitually done on Sunday, without offending public sensibility, although in a more ascetic age they were thought sinful. The receiving the verdict of a jury, who have perhaps been long confined, and may be mentally and physically exhausted, in order that they may be discharged, is a work of necessity within the common and the legal meaning of the word, and may be justified on religious and moral grounds. But whether this be so or not, it is not forbidden by any statute of this State, and is therefore a lawful and valid act. I think that probably it has repeatedly occurred.

We do not say how it would be, (if we may suppose such an improbable case,) if a court should undertake to sit on Sunday for the trial of actions, civil or criminal, or for giving judgments, when no extreme necessity for it existed. As long practice makes the law of a court, probably its proceedings in such cases would be deemed irregular, as was held in the in-

stance of taking a deposition on Sunday, in *Sloan* v. *Whitford,*
3 Ire., 307.

Per Curiam.    There is no error in the judgment, which is
affirmed.

Let this opinion be certified.