STATE v. CHARLES P. McGIMSEY.

*Discharge of Jury before Verdict—Sunday—Ridings of Judges—Certiorari.*

1. Where a jury, charged in a case of capital felony, retired at 12 o'clock on Saturday night for deliberation, and were discharged at 6 o'clock the next evening, Sunday, before verdict, because ''it appeared they could not agree,'' *it was held*, that the prisoner was entitled to be discharged.

2. The facts which constitute the necessity for discharging a jury before verdict must be distinctly found by the judge and set out in the record. The facts found are conclusive, and the law arising thereon reviewable.

3. The expiration of a term of court is no ground for discharging a jury before verdict. The term may be continued for the purposes of the trial. Bat. Rev., ch 33, § 108.

4. If the judge is not present to hold a court at the time fixed by law, it is the duty of the sheriff to adjourn from day to day until sunset on the fourth day. Bat. Rev., ch. 17, § 396.

5. The fact that under the circumstances of this case the court sat on Sunday, is not assignable for error.

6. Before the act of 1879, assigning the judges to the different districts, an exchange of circuits with the consent of the governor under the act of 1877, was not in violation of section eleven, article four, of the amended constitution.

7. A writ of *certiorari* to bring up the record in a case is the proper substitute for an appeal.

(*State* v. *Garrigues*, 1 Hay., 241 ; *Honeycutt's case*, 74 N. C., 391 ; *Spier's*, 1 Dev., 491 ; *Ephraim's*, 2 Dev. & Bat., 162 ; *Prince's*, 63 N. C., 529 ; *Alman's*, 64 N. C., 364; *Jefferson's*, 66 N. C., 309 ; *Wiseman's*, 68 N. C., 203 ; *Adair's*, 66 N. C., 298 ; *Taylor's*, 76 N. C., 64 ; *Rickett's*, 74 N. C., 187 ; *Biggs'*, 64 N. C., 202, cited, commented on and approved.)

PETITION for a Writ of *Certiorari* filed by the prisoner and granted at January Term, 1879, of THE SUPREME COURT.

The record sent up in obedience to the writ shows that the prisoner was tried, for the murder of one Lawson

Weaver, at Fall Term, 1878, of BUNCOMBE Superior court, before *Avery, J.*

The jury were discharged before verdict, and the following order entered of record : "The jury having been sworn and impannelled in this case on Thursday evening of the second and last week of the term, and the trial having been commenced on said evening and lasted until 12 o'clock on Saturday night of the regular term, and it now appearing at 6 o'clock on Sunday evening following that the jury cannot agree on a verdict, it is therefore ordered by the court that a juror be withdrawn and a mistrial had, and that the prisoner be remanded to jail till the next term of the court."

His Honor filed the following additional statement which was also sent up by the clerk as part of the record : The charge was delivered to the jury and they retired between 12 and 1 o'clock on Sunday morning after the expiration of the regular term, and the sheriff under instructions of the court, announced that the court was adjourned until Sunday morning at 9 o'clock, at which hour the prisoner was brought in court, and it appearing that the jury had not agreed, the sheriff announced an adjournment until 6 o'clock p. m. of the same day, and the prisoner was remanded.  At 2 o'clock the judge went into the court house at the request of the jury, communicated through the officer in charge, for further instructions, and the solicitor, the prisoner's counsel and the prisoner being present in court, the jury were brought in and asked in the usual manner if they had agreed, and the foreman said they had not, but desired further instructions.  The court reiterated the charge upon the point as requested, and immediately the said juror and another juror stated, "with that instruction they were satisfied the jury would never agree."  And the judge said before the jury had again retired and in their hearing, but addressing the counsel as well as the jury, "we will meet again at 6 o'clock and then see what can be done"—consid-

ering the question at that time as to whether he had the power to take the jury with him, in case they did not agree, to Madison county where he was required by law to hold court the following day, Monday. He then prepared the order set out above, and on coming into court at 6 o'clock and ascertaining that the jury had not agreed, directed the clerk to enter said order on the minutes of the court, after stating that he would have to order a mistrial. The prisoner was remanded to jail and the court adjourned.

*Attorney General, T. F. Davidson* and *J. L. Henry,* for the state.

*Messrs. Carter, Merrimon* and *McLoud,* for the prisoner.

ASHE, J. The question presented for the consideration of this court is, whether the court below had the right to discharge the jury who were impannelled in the case, and hold the prisoner for another trial.

It is a maxim of the common law that no person shall be twice put in jeopardy of life or limb; and this principle founded in humanity has been incorporated in the constitution of the United States. It has been adopted and acted upon in our courts from the foundation of the government to the present time. We are aware that in many of the states there has been a strong tendency to ignore the maxim of the common law and submit the question to the discretion of the courts. But in this state, beginning with *Garrigues'* case in 1795, reported in 1 Haywood, through a current of decisions down to the case of *State* v. *Honeycutt,* 74 N. C., 391, the principle of the common law has been steadily kept in view and adhered to with some relaxation of the rule. *State* v. *Spier,* 1 Dev., 491; *Ephraim,* 2 D. & B., 162; *Prince,* 63 N. C., 529; *Alman,* 64 N. C., 364; *Jefferson,* 66 N. C., 309.

By these and other decisions of this court, it has been uni-

formly maintained that where a jury has been charged in a capital felony and the prisoner's life put in jeopardy, the court has no power to discharge the jury and hold the prisoner for a second trial, except in cases of absolute necessity. These cases of necessity form exceptions to the general rule, and in every case where the court undertakes to exercise the power of discharging a jury in a capital case, it will be error unless brought within one of the exceptions. The inability of a jury to agree upon a verdict has been recognized by our courts as an exception to the general rule. See cases of *Jefferson, Prince,* and *Honeycutt, supra.*

In *Jefferson's* case the prisoner was discharged, but PEAR-SON, C. J., in the opinion of the court, says: " If His Honor had remained at court ready to instruct the jury and had found the fact that the case had been with the jury four days, and that from declarations of jurors in the presence of the others and in open court, before him, he was satisfied the jury would not agree, and that it was useless and unnecessary for the purposes of the case to continue the term longer, and had thereupon discharged the jury, there would have been no error ;" and in *Honeycutt's* case in giving the opinion he said the conditions laid down in *Jefferson's* case had all been complied with : "The case had been with the jury for six days, and His Honor, not content with the declarations of some of the jurors in presence of each other in open court before him, polls the jury on that question, and on this evidence finds as a fact that the jury could not agree and orders a discharge of the jury and the prisoner be held for trial at the next term." And he proceeded to say " that the supposed facts in *Jefferson's* case were fully considered by the members of the court, and although that is a *dictum* as rather matter used for illustration, after full consultation we now hold it to be the law of the land." This *dictum,* then, is the law of this state, and the last expression of judicial determination on this sub-

ject. Let us then see if in the present case there has been a compliance with the conditions laid down in that *dictum.*

From the record it appears that the jury were impannelled in the case on Thursday evening of the second week of the term, and the arguments were closed and the jury retired to make up their verdict between twelve and one o'clock on Saturday night, and His Honor for the purpose of the trial had the court adjourned until the next morning, Sunday, at nine o'clock, when it being ascertained that the jury had not agreed, the court was adjourned until six o'clock p. m. At two o'clock the jury sent for the judge and requested further instructions and after receiving them, two of the jurors in the presence of the others and before His Honor in open court, said, with that instruction they were satisfied they would never agree; and as they were retiring His Honor in their hearing said " we will meet again at six o'clock and see what can be done;" and at six o'clock the jury were called in and asked in the usual form by the clerk, if they had agreed, and their response through their foreman, was, that they had not. His Honor states that he prepared the order for withdrawing a juror and ordering a mistrial before he went to the court house at six o'clock, and had determined to order a mistrial if the jury should announce that they had not agreed, and it should not appear probable that they would agree. And when the jury did announce they had not agreed, he signed the order and had it spread on the record. The statement in this order that " it appearing the jury cannot agree " is not a finding of the fact that the jury cannot agree so as to be a compliance with the conditions of the *dictum.* Nor is it helped by the return of His Honor to the *certiorari,* which is to be regarded as a part of the record. For when the jury came in at two o'clock and the judge gave them the instructions asked, two of the jurors only, without consultation with their fellows, said they could never agree. His Honor was not

satisfied then that they could never agree, for he sent them to the jury room for further deliberation, and when they came in at six o'clock and in response to the question by the clerk announced that they had not agreed, His Honor could not then have been satisfied they could not agree, for they were not polled, nor even asked the question if they were likely to agree, and a juror was withdrawn and a mistrial had by an order which His Honor had drawn up before he went into the court house at six p. m., he having determined to order a mistrial if it was probable the jury could not agree. The amount of the finding is that it was probable the jury would not agree upon a verdict. That does not meet the requirement of the law. His Honor should have found the fact distinctly and set it out in the record, that the jury could not agree, or he was satisfied they would never agree, and that it was unnecessary to prolong the term for the purposes of the trial, before he undertook to exercise the power of withdrawing a juror and ordering a mistrial. It was his duty to find the facts and place them on the record; and these findings of the court below are conclusive and not the subject of review here, but the decision of His Honor as to the law arising upon them may be reviewed and reversed. *State* v. *Wiseman,* 68 N. C., 203 ; *Prince* and *Jefferson, supra.*

The expiration of the term was no ground for discharging the jury ; for it is provided by statute that " in case the term of a court shall expire while a trial for felony, &c., shall be in progress, and before judgment shall be given therein, the judge may continue the term as long as in his opinion it shall be necessary for the purposes of the case." Bat. Rev., ch. 33, § 108. It was under the authority of this provision that His Honor continued the term until Sunday, and perhaps if he had continued the time for two or three days longer, the jury would have agreed, for we have instances of their coming to an agreement after several days of delib-

eration. In *Adair's* case, 66 N. C., 298, they were kept togeth-er from Saturday evening until the following Wednesday and agreed. In *Taylor's* case, 76 N. C., 64, they were delib-erating several days, and came to an agreement. His Honor might well have continued Buncombe court until the follow-ing Wednesday, consistently with his duty and the law ; for Madison court which was to begin on Monday after Buncombe court, would by law have been adjourned by the sheriff from day to day until sunset of the fourth day. Bat. Rev., ch. 17, § 396.

We think there is nothing in the objection raised that the court was held on Sunday for the purposes of this trial, under the circumstances. *State* v. *Ricketts,* 74 N. C., 187.

Nor do we think there was any force in the objection that His Honor, Judge Avery, had no right to hold the superior court for the county of Buncombe at fall term, 1878. He and Judge Gudger had agreed upon an exchange of circuits, and as appears from the record, the consent of the governor was obtained in accordance with the requirements of the act of 1876-'77, ch. 27, § 14, and Judge Avery was authorized to hold the courts of the ninth district, and Judge Gudger those of the eighth district. This does not violate the provisions of section eleven, article four of the amended constitution, because they apply to the ridings after the judges shall be assigned by law to the districts, and that was not done before the act of January 29th, 1879, ch. 11.

The case was properly brought to this court by writ of *certiorari.* The supreme court has the power to issue any remedial writs necessary to give it a general supervision and control of the superior courts. Const., Art. 4, § 8. There-fore when the matter involves the power of the superior court and error in its exercise the record may be brought up by *certiorari* for review. *Biggs ex parte,* 64 N. C., 202 ; *Jefferson's case, supra.*

We think the ancient rule of the common law has been

sufficiently relaxed by our predecessors, and we are unwilling to move a step further in the direction of discretion. We abide the law as we find it established, acting upon the principle of *stare decisis;* and governed by this principle after a careful and deliberate consideration of this case, we are of the opinion that the state of facts set out in the record does not show the existence of a necessity for the discharge of the jury. In coming to this conclusion, we are aware that its effect may possibly be to turn loose a bad man upon society, but it is better in the administration of the law there should be an occasional instance of violence even to the sense of public justice, than that a principle should be established which in times of civil commotion that may occur in the history of every country would serve as an engine of oppression in the hands of corrupt time servers and irresponsible judges to crush the liberties of the citizen. The prisoner, Charles P. McGimsey, is entitled to his discharge. Let this be certified, &c.

PER CURIAM.                                        Prisoner discharged.