STATE v. ALEXANDER HOWARD.

*Homicide—Trial—Juror—Evidence—Res Gestæ.*

1. Sunday is not a *juridical* day, hence an adjournment of the court from Saturday night to Monday morning during the progress of a trial for murder is not violative of the act requiring the adjournment to be "from day to day." Rev! Code, ch. 31, § 16.

2. A juror is not disqualified by the act of 1879, ch. 200, unless he has served in the *same* court within the prescribed period.

3. Evidence of the declarations of a prisoner made twelve months before the homicide, viz: "Don't you reckon if any one was to run in on old man Autrey (the deceased) he would get a handful of money," (the proof being that deceased kept money about him and was robbed on the night of the murder,) is admissible against him, as tending to affect him with a *knowledge of the reputation* that deceased kept money in his house. See *State* v. *Norton, post*, 628.

4. And where the prisoner offered to prove a conversation with a witness, which proved no part of the *res gestæ*; *Held*, that its rejection was not error.

(*State* v. *Ricketts*, 74 N. C., 187; *McGimsey*, 80 N. C, 377; *State* v. *Thorne*, 81 N. C:, 555; *State* v. *Tilly*, 3 Ired., 424; *State* v. *Worthington*, 64 N. C., 594; *State* v. *Hildredth*, 9 Ired., 440, cited and approved)

INDICTMENT for Murder removed from Sampson County and tried at Fall Term, 1879, of WAYNE Superior Court, before *Eure, J.*

The prisoner was charged with the killing of Babel Autrey, on the 24th of July, 1878. When the case was called for trial, and before a jury were selected and impaneled, the

prisoner's counsel moved to discharge the prisoner on the ground that the transcript from Sampson county showed that the judge who tried the case, in continuing the term for the purposes of the trial beyond the limit of the regular term, had adjourned the court from Saturday night to Monday morning. (On the trial in Sampson the jury could not agree, and a mistrial was had by and with the consent of the prisoner.) And this the prisoner's counsel insisted was not an adjournment " from day to day " in compliance with the statute. Motion overruled and prisoner excepted.

In selecting the jury the prisoner challenged one of the special venire on the ground that he was disqualified by the act of 1879, ch. 200. The facts material to this exception are set out in the opinion of this court.

*Evidence.*—The state introduced Isaac Williams as a witness, and offered to prove a conversation with the prisoner which took place about twelve months before the homicide. The prisoner objected to this evidence as being too remote. The objection was overruled and the witness testified that the prisoner said : " don't you reckon if any one was to run in on old man Babel Autrey he would get a handful of money "? The prisoner excepted. There was evidence on the part of other witnesses that the deceased was robbed on the night of the homicide of a considerable amount of money, and that he was generally reputed to be a man of property and kept money in his house where he lived and where the homicide occurred.

The state then introduced Carlton Howard, an accomplice, who testified that about a week before the homicide he agreed with the prisoner to meet him on the premises of the deceased on the night of the homicide for the purpose of robbing him, and that in accordance with said previous agreement the witness and the prisoner did meet on said premises on that night, and he, the witness, committed the

robbery while the prisoner was engaged in the murder of the deceased.

Hester Autrey, a witness for the state, testified that she saw the prisoner on the day of the night of the homicide come from the direction of his own house to the house of the deceased through the field, saw him stop near the house of the deceased and have a conversation with deceased (which on account of the distance of the parties from her she did not hear) and then the prisoner passed on through the premises and went out in the direction of the house of Carlton Sessoms, who was subsequently examined for the prisoner. She further testified that the prisoner came to the house of deceased unaccompanied by any one and left the premises by himself.

Carlton Sessoms testified, for the prisoner, that he saw the prisoner on the day of the night of the homicide at his (witness') house, that the prisoner came there about nine or ten o'clock in the forenoon of that day, and remained about a half hour, and that he came to his house from the direction of the house of the deceased. Here the prisoner offered to prove by this witness, that while the prisoner was at his house on that day he had a conversation with him, and in that conversation the prisoner told him the reason why he went to the house of the deceased that morning. The solicitor for the state objected, and evidence of this conversation was ruled out. Prisoner excepted.

The jury rendered a verdict of guilty. Rule for new trial discharged, motion in arrest overruled, judgment, appeal by prisoner.

*Attorney General,* for the State.
*Messrs. Guthrie & Carr* and *E. T. Boykin,* for prisoner.

ASHE, J. The first exception was to the adjournment of the court from Saturday until Monday while the jury had

40

the prisoner in charge. Sunday, according to the usages and practice of our courts, is not a *juridical day*, and it was altogether proper that the court should have been adjourned over from Saturday until Monday. There has been some instances in the judicial proceedings in this state where the courts have held their session on Sunday, but the cases are rare, and whenever it has been done, exception, we believe, has generally been taken to the course of the court, upon the ground that it could not legally sit on that day. But this court has held that in special cases *ex necessitate* the court might sit on Sunday. *State* v. *Ricketts*, 74 N. C., 187, and *State* v. *McGimsey*, 80 N. C., 377. The holding court on the Sabbath is not forbidden by the common law or any statute in this state, but it has been the long settled and almost universal practice of our courts, when a term continues so long that a Sunday intervenes, to adjourn over until Monday; and "long practice makes the law of a court," a law which has its origin and observance in a deference to the settled religious habits and sentiments of a large majority of our citizens, a law whose violation is not excused except in case of necessity. The objection is unfounded.

The next exception, that His Honor refused to allow the prisoner's challenge to a juror because he had served on the jury within two years next preceding that term of the court, is equally untenable. The act of 1879, ch. 200, under which the challenge was claimed, provides: "That it shall be a disqualification and ground of challenge to any tales juror that such juror has acted in the same court as grand or petit juror within two years next preceding such term of the court." The juror challenged on his *voir dire*, stated that he had not served as grand or petit juror in the superior court of Wayne county within two years next preceding that term of the court, but had within that time acted as a juror in the inferior court. This did not disqualify the juror. The construction put upon this statute by this court

is, that the juror must have acted in that capacity in the *same* court within the time limited. *State* v. *Outerbridge, ante,* 617; *State* v. *Thorne,* 81 N. C., 555.

The next exception is that the court allowed the state to prove, that twelve months before the homicide the prisoner in conversation with one Isaac Williams, a witness for the state, said to him, "don't you reckon if any one was to run in on old man Babel Autrey (the deceased) he would get a handful of money." It was in proof by other witnesses that the deceased was robbed on the night of the homicide of a considerable amount of money, and that he was generally reputed to be a man of property and kept money in his house. The evidence of this conversation was clearly admissible, if for no other purpose, that it tended to affect the prisoner with a knowledge of the reputation that the deceased *kept money in his house.*

The remaining exception, that the court excluded the evidence of the declarations of the prisoner to the witness Carlton Sessoms on the day of the night of the homicide, giving the reason why he had gone to the house of the deceased that morning, we hold was properly overruled. One Hester Autrey, a witness for the prosecution, testified that on the day of the night of the homicide she saw the prisoner, unaccompanied by any one, come from his own house and go to the house of the deceased, and there near his house have a conversation with him, and then went off through the premises in the direction of the house of one Carlton Sessoms, who, on his examination by the prisoner, testified that the prisoner, on the morning of the day of the night of the homicide, about nine or ten o'clock, came to his house from the direction of the house of the deceased and remained about a half hour, and in conversation with witness stated the reason why he had gone to the house of the deceased that morning. It was the rejection of this evidence that formed the ground of the exception. " As evi-

dence, what a party says is received against him but not for him. Unless his declarations form a part of the transaction, they are not receivable in evidence." *State* v. *Tilly,* 3 Ired., 424; *State* v. *Worthington,* 64 N. C., 594.

In the case of *State* v. *Hildredth,* 9 Ired., 440, this court held the rule to be, "that a person's declarations are not admissible for him. The rule is not founded on the idea that they would never contribute to the ascertainment of truth, for very often they might be entirely satisfactory, but there is so much danger, if they were received, that they would most commonly consist of falsehoods fabricated for the occasion, and so would mislead oftener than they would enlighten, that it was found indispensable as a part of the law of evidence to reject them altogether, except under a few peculiar circumstances." We do not see that this evidence falls within any exception. The conversation was not a part of the *res gestæ.* The transaction was past and the evidence offered comes within the rule of exclusion.

There is no ground for a new trial or arrest of judgment. There is no error. Let this be certified to the superior court of Wayne county that further proceedings may be had agreeably to this opinion and the law.

PER CURIAM. No error.