CASE No. 1018.

## HELLAMS v. ABERCROMBIE.

1. There is nothing in the common law or in the statutes of this state, which renders a mortgage, executed on Sunday, void on that account.
2. While a surety may, in equity, compel the principal debtor to pay the debt and so save him harmless (*Norton* v. *Reid & Sitton,* 11 *S. C.* 593,) yet he cannot recover of the principal until he has himself made payment; but where he holds a mortgage given him by the principal as an indemnity, he may have judgment of foreclosure before any payment by him upon the debt.
3. And in such case, the surety, being liable to the creditor for the payment in full of note and interest, is entitled to foreclose his mortgage for the whole amount of his liability, notwithstanding judgment had been previously obtained by the creditor against the principal debtor for a less sum.

---

Before FRASER, J., Pickens, March, 1879.

This action was commenced April 14th, 1875, by John Hellams, surety, against Elihu W. Abercrombie, principal debtor, to foreclose a mortgage given for indemnity, and upon the death intestate of the plaintiff was continued by his administrator, John R. Hellams.

The liability of plaintiff and defendant was on a sealed note to John Woods for $200, which note was executed November 8th, 1858.   The mortgage given by Abercrombie to his surety, Hellams, as an indemnity, bore date September 12th, 1859. Woods obtained judgment against his principal debtor, the defendant here, March 25th, 1869, for $165.33, and no appeal was

taken. Hellams, the surety, was never sued. The judgment against Abercrombie has never been satisfied. Upon an attempt by Woods to enforce it, defendant claimed his homestead, and pending this claim this action was commenced.

At the trial the defendant testified that the mortgage was executed on Sunday. It was in proof that the mortgaged premises were worth $800, and that the judgment of Woods was the oldest other lien upon the land.

The presiding judge decreed that the plaintiff was entitled to recover the full amount of the note on which his intestate was surety, and ordered a reference to ascertain the amount due. From this decree the defendant appealed.

Mr. A. Blythe, for appellant.

Mr. J. H. Whitner, contra.

The expression dies dominicus et non dies juridicus, relates only to matters of a judicial character; and, at common law, a mortgage executed on Sunday would have been valid. 2 Bay 232; 3 Burr. 1595; 3 Coke *354; 3 Bl. Com. 375; 4 Strob. 491; 2 Pars. on Cont. 757, note n; 5 Wait's Act. & Def. 114; 74 N. C. 187. Nor is it invalid under the only statute we have, as construed by the English courts. 2 Stat. 396; Gen. Stat. 390, § 1; 1 Taunt. 131; 3 B. & C. 232; 5 Id. 406; 7 Id. 596; 2 Man., Gr. & S. 72; 16 Ad. & E. (N. S.) 48; 1 Cromp., Mees & Ros. 422; 5 Wait's Act. & Def. 116. Giving a mortgage is not a part of a man's ordinary calling.

A surety is endangered, damnified and injured whenever the debt becomes due and the principal debtor fails to pay it; and then, i. e., upon the failure of the principal to pay at maturity, he is entitled to enforce his counter-security, (bond or mortgage of indemnity,) if he has one, or, if he has no such security, to proceed upon his naked equity, and require his principal to relieve him from his liability by paying the debt. 4 Des. 44; 4 Id. 227; 2 Bay 145; 2 Rich. 80; Rice's Eq. 275; 3 Strob. Eq. 65; 11 S. C. 593; 2 Brown's Ch. R. 582; Story's Eq., § 327.

The surety is not relieved from his liability on the note by the judgment recovered by the creditor against his principal.

The note, as to him, is not merged in the judgment against his principal; nor could he plead the recovery of said judgment in bar to an action against him on said note. 6 *Rep.* 46; 1 *Bail.* 348; 2 *Bail.* 362.

The creditor's recovery against the principal debtor does not measure or limit the principal's liability to the surety. 1 *Hill* 234; *Cheves* 16.

March 31st, 1881. The opinion of the court was delivered by

SIMPSON, C. J. This was an action brought by the respond-ent's intestate, in his lifetime, to foreclose a mortgage given by the appellant to the said intestate to indemnify and save him harmless from all loss or damage by reason of his suretyship on a note of said appellant to one John Woods.

The appellant, by his answer, admitted the execution of the note and mortgage, but insisted that inasmuch as the creditor, Woods, had sued him on said note and recovered judgment against him in said suit for the sum of $165.33, which his prop-erty was amply sufficient to pay, that the condition of his mort-gage had never been broken, and the respondent's intestate, therefore, could not maintain this action; but even if he could maintain the action he was only entitled to a judgment of fore-closure for the amount recovered by the creditor, Woods, against him as principal debtor; that the said mortgage was executed on Sunday, and was, therefore, illegal and void.

His Honor, T. B. Fraser, who heard the case, adjudged and decreed that the respondent, as the personal representative of the surety, John Hellams, was entitled to have judgment of fore-closure for whatever amount might then be due upon the note to Woods, and ordered a reference to ascertain that amount. The defendant, Elihu W. Abercrombie, appealed from that decision.

Three questions are presented in the appeal in this case:

1. Is a mortgage executed on a Sunday illegal and void on that account?

2. Can a surety who holds a mortgage of indemnity on the principal, enforce it before he pays the debt for which he is surety?

3. If so, can the surety recover from the principal a greater

sum than the creditor has reduced to judgment against the principal?

Whatever may be our opinion as to the moral or religious aspects of the first question above, yet this case cannot be decided upon considerations of that character.    The question is strictly a legal question and must be determined upon legal principles.  As was said in the case of *State* v. *Ricketts*, 74 *N. C.* 187, "what religion and morality permit or forbid to be done on Sunday, is not within our province to decide.    In different Christian countries and in different ages in the same country, very differing opinions have prevailed upon these questions."    So that in all matters of this kind, when the judgment of a civil court is invoked in reference to a special act, the only question to be considered is, is the act obnoxious to any established principle of the common or statute law?

A contract may be briefly defined to be an agreement between two or more parties to do or not to do some act founded upon a sufficient legal consideration.    The two principal elements are— *first*, the act to be done; and, *second*, the consideration.    If these be both legal, then the contract is binding, unless there is something external to the contract itself which forbids enforcement.

The contract in this case is an ordinary contract between principal and surety, by which the principal undertook to indemnify and save harmless the surety, as to the debt of the principal, in consideration of obtaining the credit and name of the surety in contracting the debt.    The benefit of this credit of the surety the principal has enjoyed for near twenty years, and he now seeks to repudiate his contract, founded upon this as a consideration, on the ground that it was obtained originally on a Sunday.    Even if the law allowed him to avoid his responsibility on the ground suggested, the same high morality which prompts him to invoke the law should also prompt him to save his friend harmless. But to return to the question.    Is there anything external to this contract which renders it void?    In other words, is a contract of this character illegal, either by the common or statute law, because made on a Sunday?

The argument of the respondent's attorney has gone very fully and learnedly into this question.    The case of *Swann* v. *Broome*,

**H**

3 *Burr.* 1595, referred to by him, seems to be the leading case on the subject. In that case it was held by Lord Mansfield that at common law a Sunday was not *dies juridicus;* that at first, among the ancient Christians, all days were used alike for hearing causes in the courts, " not sparing, as It seemeth, the Sunday itself;" but afterwards certain canons, reaching back to the year 517, were made, taken notice of in Spellman's Original of the Terms, which forbid the use of Sunday for hearing causes or holding pleas. These canons were confirmed, says Lord Mansfield, by William the Conqueror and Henry II., and so became a part of the common law of England. This inhibition of the common law did not, however, extend to fairs, markets, sports and pastimes ; these were left to be regulated by statutes.

How far the common law, as thus recognized and announced by Lord Mansfield, has been observed in this state is not material to this case, as the question here is not one involving the powers of the court on a Sunday, but one involving the validity of a contract made on a Sunday.

Parties who may be curious as to the powers of the court in this respect, will find the law in the cases of *Shaw* v. *McCormick* and *Hiller* v. *English,* the first in 2 *Bay* 232, and the second in 4 *Strob.* 488, in the last of which Judge Wardlaw delivered a very interesting and learned opinion, Judge O'Neall dissenting in a masterly argument from the opinion of the majority of the court, thus pronounced by Judge Wardlaw.

It is true that in the case of Shaw *v.* McCormick this expression is used : " That Sunday is not a day in law—*dies dominicus non est dies juridicus*—consequently, all temporal business transacted on that day is null and void."

Upon examination of the facts of that case it will be seen that the reporter was not warranted in supposing that the decision reached the conclusion announced in the above extract; on the contrary, this was an inference of his own, not sustained by the facts.

Under these cases, then, it appears there is nothing in the common law which renders this contract void. In 2 *Pars. on Cont.* 757, it is said : " But as to the making of contracts, and

all other acts not judicial, the common law made no distinction between Sunday and any other day."

Is the contract void by virtue of any statute of the state? The act of 1712 is the only act on the subject. That act forbids tradesmen, workmen, laborers, &c., from exercising any worldly labor, business, or work in their ordinary calling upon the Lord's day under a certain penalty.

The execution of the mortgage now under consideration does not fall within the penalty of this act, and therefore void. It was not an act done within the ordinary calling of the parties. It was a casual and exceptional act, and in no way violated the act of 1712.

The first section of 29 Charles II. was very similar in its terms to the act of 1712. This section was construed in the cases of *Drury* v. *De Fontaine,* 1 *Taunt.* 131, and in *Bloxsome* v. *Williams,* 3 *B. & C.* 232, not to embrace contracts made outside of the ordinary calling of the party. True, in one case decided since a different doctrine was held, the construction above being regarded as too narrow and contrary to the spirit of the act; but in the subsequent decisions, especially in the case of *Rex* v. *Inhabitants of Whitnash,* 7 *B. & C.* 596, the decision in the case of *Bloxsome* v. *Williams, supra,* was re-affirmed, and a contract of hiring between a farmer and a laborer for a year, made on a Sunday, was held valid. Such, in our opinion, is the proper construction of the act of 1712, incorporated in the General Statutes, page 390.

2. Can a surety sue the principal before he pays the debt of his principal?

It has been settled as a principle of equity that upon the falling due of the debt a surety is entitled to go into equity and compel payment by the principal, to his relief. Although the surety may not be sued, nor, as yet, has been disturbed, yet as long as the debt of his principal remains unpaid there is a cloud hanging over him, and this he is entitled, in equity, to have cleared away; which right Courts of Equity have always enforced—in the application of remedial justice—by proceedings in the nature of bills *quia timet.*

In the case of *Norton* v. *Reid & Sitton,* found at the end of 11

*S. C.*, this doctrine was fully recognized and applied, and it may be regarded as sufficiently settled in this state, without reference to other authority. But this does not touch the question under discussion, *i. e.*, as to the right of a surety to sue and recover from the principal the amount of the debt for which he is liable as such surety before he has actually paid the debt himself.

The two questions stand upon different foundations and are governed by different principles. In the one case the object is to enforce payment by the principal of a debt which he contracted to pay. In the other it is to require the principal to pay the surety before any liability attached, and before any cause of action has accrued to the surety. No action can be had until a cause of action has accrued, and the only cause that can ordinarily exist between a principal and his surety, growing out of the suretyship, is payment of the debt by the surety. Until this is done the surety has no basis upon which to stand in court and demand payment to himself. Until this is done his remedy is in equity, as in the case of *Norton* v. *Reid & Sitton, supra.*

In De Colyar on Principal and Surety, page 308, it is said : " The most important right which a surety possesses before any payment by him is, that after the debt has become due he may come into a Court of Equity and compel the debtor to exonerate him from his liability by at once paying the debt." " At law, the surety must pay the debt before he can have an action against his principal, but not so in equity. After the debt is due the surety may resort to chancery to compel the principal to exonerate him and pay the debt." *Story's Eq.* 322, § 327 ; 2 *Id.* 35, § 730 ; *King* v. *Baldwin*, 2 *Johns. Ch.* 554. " As a general rule, as soon as the surety has paid anything for the principal debtor the latter becomes chargeable to him." *De Colyar* 311.

Though as just stated, the surety must have first paid something for the principal, in order to make the latter chargeable to him, yet it appears " that by express contract the surety may, before payment, be entitled to recover damages." *Id.* 312. And while it is the general rule that a surety cannot proceed against his principal until he has paid the debt, either in money or by taking it up through the substitution of his own note, as established in many cases—*Elwood* v. *Diefendorf*, 5 *Bart.* 398

*Brandt on Suretyship* 235; *Stinson* v. *Brennan, Chev.* 16; *Peters* v. *Barnhill*, 1 *Hill* 234—yet it has been held, where the cause of action between them arises out of a bond of indemnity or other collateral security, involving an independent contract, that action may be instituted on that, on its breach, even before payment.

In this case the action is to foreclose a mortgage. The mortgage is not set out in the record; but it is stated to be a mortgage of indemnity and to save harmless.

In the case of *Bethune* v. *Wallace*, 2 *Rich.* 80, where a mortgage had been given of a slave by a principal to his surety to indemnify and save him harmless, it was adjudged by the court that a failure to meet the obligation by the principal was such a breach of the condition of the mortgage as authorized the surety to sue for the slave at once without payment of the debt. Also, in Brandt, Section 193, it is said: " A surety or guarantor who holds a mortgage on the property of the principal, may, after maturity of the debt and before paying it, have the mortgage foreclosed and the proceeds thereof applied to the payment of the debt."

Under this principle this action may be sustained and the judgment below affirmed, in so far as the right of action on the part of the plaintiff is involved before payment of the debt.

The next and last question is, as to the amount to be recovered. The judgment of the creditor against the principal is less than the notes sued on. Why this was so is not explained; but there was no appeal from this judgment, and it is the measure of the debt established against the principal. Can the surety foreclose his mortgage for more?

In the case of *United States* v. *Allsbury*, 4 *Wall.* 186, suit was commenced against the principal and one surety on a paymaster's official bond, and judgment for $10,000 recovered. Afterwards suit was brought against another surety on the bond, claiming a greater recovery. The court held, as the liability of the principal had been fixed at $10,000 by the first judgment, the surety in the last suit could not be held liable for more, otherwise the surety would be held for a greater liability than his principal.

And in the case of *Lang* v. *Brevard*, 3 *Strob. Eq.* 64, Chancellor Dargan said that " the prominent and well-defined distinction that pervades all the cases is that the surety will be

discharged by any acts on the part of the creditor of a positive character, whereby the remedy against the principal debtor is lost, so that payment cannot be enforced against him. The case now under consideration would seem at first to fall under the principle of these cases, and but for contra decisions in our own state, which we must regard as authority, I would be disposed to determine this question by that principle."

But in the case of *Treasurer* v. *Bates,* 2 *Bail.* 362, and in other cases in this state, it was decided that a judgment against a principal could not be pleaded in bar to a suit against the surety. And in *Day* v. *Hill,* 2 *Spears* 628, in an action on a joint and several note, where one of the parties had been previously sued, and, by some mistake, judgment rendered for a less amount than was due, the balance was recovered from the other parties. *Peters* v. *Barnhill* and *Stinson* v. *Brennan, supra,* were cases where the sureties were held liable, though the creditor had failed to recover judgment against the principals on suit brought against them, and the sureties were allowed to recover against the principals.

These cases were adjudicated in our own courts, and they are so nearly in point that we cannot but yield to their authority.

The judgment below is affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.