### EASON v. WITCOFSKEY.

1. Under proceedings in escheat under the statute, claimants were called
   upon by advertisement published in a newspaper on the first Sunday
   of every month for six months to present their claims to the estate.
   Several claimants appeared and filed their traverses, and it was ad-
   judged that the lands in question were liable to escheat and a sale was
   ordered. *Held*, that this was a judgment, and that a sale thereunder
   was valid as to the purchaser, even if the judgment should be after-
   wards reversed.
2. The statute required the notice to claimants to be advertised "in a
   newspaper of the county the first week in every month for six months."
   *Held*, that a publication of the notice once a week in every such first
   week fulfilled the requirements of the law.
3. A publication of such notice in a paper issued to subscribers on Sun-
   day morning was not illegal—certainly it cannot be so held after
   judgment of escheat in the case. Can a purchaser at a sheriff's sale

be heard to allege insufficiency in a notice lying back of the judgment under which the sale was made?

4. Where a statute declares that no work of a certain character shall be done on Sunday, and any person "offending in the premises shall forfeit the sum of one dollar," is not the forfeiture prescribed the only penalty incurred? Or, is the work so done also thereby made illegal?

Before PRESSLEY, J., Charleston, April, 1888.

This was a controversy without action submitted upon the following agreed statement of facts:

William G. Eason, auditor and *ex officio* escheator of Charleston County, claims against John F. Witcofskey, that he, the said John F. Witcofskey, as purchaser, as hereinafter set forth, shall specifically perform the contract of sale, which the said John F. Witcofskey entered into with him, the said escheator, as vendor of the property hereinafter described. And the said John F. Witcofskey resists said claim, and denies the validity of said claim.

The following are the facts upon which the said controversy depends: On June 25, 1885, a certain inquest of escheat of certain lands escheated to the State of South Carolina, by the death of Thomas W. Malone, upon the notification to the court issued by William G. Eason, escheator as aforesaid, was had in the Common Pleas for Charleston County, and a verdict of a jury made thereon. Thereupon the judge of said court certified the same under his hand and the seal of the court to the said escheator, who, after recording the same as required by law, returned the same into the office of the clerk of Common Pleas. Upon the return of said inquest, the clerk of said court thereupon caused to be advertised in a newspaper of the said County of Charleston, called the "Sunday Dispatch" (the same being a weekly newspaper issued on Sunday), the first week in every month for six months, the following notice:

"STATE OF SOUTH CAROLINA, ⎫
   "Charleston County.          ⎬ *In the Circuit Court.*
                                ⎭

"By Theodore G. Boag, Esq., clerk of the said court for said county.

"To whom it may concern. An inquest of escheat has been found by the jury at the June term of this court, on 22nd day of

June, 1885, against the several lots of land, below described, of which Thomas W. Malone, who died intestate at Charleston, in the year 1864, was seized at the time of his death. He is supposed to have been a native of one of the West India Islands, perhaps Guadalupe. All and singular, his heirs, if any there be, or others claiming under him, are hereby required to appear and make claim within the time, and according to the provisions set forth and prescribed by the acts of assembly of this State in such case made and provided. Schedule of lots, pieces or parcels of land whereof Thomas W. Malone died seized intestate. [In the schedule of lots printed in said notice, the lot hereinafter described appears by the description hereinafter given.]

"(Signed)              THEODORE G. BOAG,
"*Clerk of Court of C. P. & G. S., Charleston County.*"

A large number of claimants appeared and made claim, traverses for thirty-two traversers were filed; all of which were dismissed or tried and adjudged against the claims of the traversers.

On the third day of January, A. D. 1888, no person having established claim to said lands, the said clerk issued his process, signed by the judge of the Circuit Court, to the said escheator, pronouncing the said lands escheated and vested according to law, and directing him forthwith to sell and convey the same upon the usual notice. And the said escheator, as soon as he received said process, advertised the sale of said lands in the Charleston "News and Courier," a newspaper of the said county, and otherwise according to law, giving six weeks' public notice, and on the sixteenth day of February, 1888, sold the said lands in several parcels to the persons who respectively were the highest bidders for the same. Among the said purchasers, the following described piece and parcel of land was knocked down to the above named John F. Witcofskey, who was the highest bidder therefor: All that lot of land on Warren street, Charleston Neck, measuring in front, from east to west, 62 feet; from north to south, on west side, 152 feet 6 inches; on east side 150 feet; bounded north on Warren street, south on lands of Wm. Bell, east on land of Nathan Nathans, and west on land of Wm. Purse.

The said William G. Eason, auditor and escheator, as afore-

said, thereupon tendered to said John F. Witcofskey a deed of conveyance, and demanded of him compliance with the terms of said sale. The said John F. Witcofskey refused to comply with said sale as purchaser, and says that he is not bound as purchaser, and that said sale is invalid in law, because the clerk of the said court advertised the said notice in the "Sunday Dispatch," a weekly newspaper issued on Sunday.

The question submitted to the court upon this case is :

Was the said notice, so advertised, duly advertised as required by law ?

If this question is answered in the affirmative, then judgment is to be rendered against the said John F. Witcofskey, and he is to be required to perform specifically the contract of sale above set forth, and to comply with the terms thereof as purchaser of said land, and to pay the costs of this proceeding incurred by the said William G. Eason, escheator. If the above stated question is answered in the negative, then judgment is to be rendered in favor of said John F. Witcofskey for his costs.

To the above statement was appended an affidavit of good faith. The order of the Circuit Judge and the exceptions are fully stated in the opinion.

*Messrs. Hayne & Ficken,* for appellant.

The publication of any legal notice in a newspaper issued, sold, and circulated on Sunday is repugnant to the spirit and intent of the law, contravenes public policy, and is therefore illegal. *Gen. Stat.,* §§ 663, 1631, 1475, and 2592.

The notice in question is in the nature of a summons, and its publication in a Sunday newspaper is repugnant to the provisions of section 663 of General Statutes. It is a process from the Common Pleas signed by the clerk. *Bouv. Law. Dic.,* title "Process ;" 8 *East,* 547 ; *Code,* §§ 148, 88 ¶ 15, 154, 418 ; *Gen. Stat.,* §§ 873, 1411, 1412 ; 20 *S. C.,* 152 ; 20 *Johns.,* 149. Genobles *v.* West (23 S. C., 168) decides that a summons is merely a notice, and not a writ, but it does not decide that it is not process.

A newspaper issued, sold, and circulated on Sunday is issued in violation of law, and hence any notice or process published

therein is invalid and a nullity.  *Gen. Stat.*, §§ 1631, 1632; 15
*S. C.*, 110; 16 *Id.*, 597; 24 *N. Y.*, 353; 44 *Am. Rep.*, 758;
40 *Ill.*, 146; 64 *Penn.*, 447; 40 *Am. Rep.*, 245; 76 *Ind.*, 310;
78 *Id.*, 169; 41 *Am. Rep.*, 558.

*Messrs. Simonton & Barker*, contra.

September 20, 1888.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was a case agreed upon in a
controversy submitted without action.  (The statement of facts
should be embraced in the report of the case.)

After argument, his honor, Judge Pressley, held as follows:
"The question submitted, viz.: 'Was the notice published duly
advertised as required by law?' is answered in the affirmative, and
it is ordered, adjudged, and decreed, that the defendant, John F.
Witcofskey, be and he is hereby required to perform specifically,
the contract of sale made by William G. Eason, escheator, set
forth in the case submitted, and to comply with the terms of said
sale as purchaser of the land therein described, and to pay the
costs of this proceeding incurred by the said William G. Eason,
escheator."   From this order the defendant appeals upon the
following grounds: "I. Because the Circuit Judge erred in holding
that the notice in question was duly advertised as required by
law.   II. Because the Circuit Judge erred in decreeing that the
said defendant be required to perform specifically the contract of
sale made by him, as set forth in the 'Case' submitted."

As we understand it, no complaint is made as to the notice of
the sheriff's sale, after the lands were declared escheated and
ordered to be sold; but the objection is that the defendant is not
bound as purchaser, for the reason that the clerk of the court
published the notice required by section 2302 of the General
Statutes for the required period of six months in the "Sunday
Dispatch" of Charleston—a weekly newspaper issued on Sunday.
The section reads as follows: "On the return of any inquest of
supposed escheated lands by the escheator into the office of the
clerk of the county where the lands lie, he shall thereupon cause
to be advertised, *in a newspaper of the county, or other nearest
gazette,* the first week in every month, for six months, a notice

containing, &c., &c., the name of the person last seized * * * and requiring his or her heirs or others claiming under him, to appear and make claim," &c. It appears that, under the notice in the "Dispatch," a large number of claimants, without any objection to the notice, appeared and made claim. Traverses for 32 traversers were filed, all of which were dismissed or tried and adjudged against the claims of the traversers. On January 3, 1888, process was issued by the judge of Charleston County to the said escheator, pronouncing the lands escheated and vested according to law, and directing him forthwith to sell and convey the same upon the usual notice. And the escheator accordingly advertised and sold the land, which was knocked down to the defendant.

It seems to us that this was *a judgment* of a competent court upon a matter within its jurisdiction, and must stand until reversed; and such being the case, the sale made under it must stand, even if the judgment should be afterwards reversed. *Grignon's Lessee* v. *Astor*, 2 How., 324; *Vorhees* v. *The Bank*, 10 Pet., 475; *LeConte* v. *Irwin*, 19 S. C., 558. In the last case cited it was said: "Therefore it is a rule, nowhere disputed, that third persons purchasing at a sale made under the authority of a judg-. ment or decree, not suspended by any stay of proceedings, thereby acquire rights which no subsequent reversal of such judgment or decree can in any respect impair. (*Freem. Judg.*)"

But it is said that the notice was absolutely void, as if there had been no publication at all, for the reason that it appeared in a newspaper "*issued on Sunday*." As was said in *Heller* v. *Abercrombie* (15 S. C., 112), "Whatever may be our opinion as to the moral or religious aspects of the question, the case cannot be decided upon considerations of that character. The question is strictly a legal one and must be determined upon legal principles"—citing *State* v. *Ricketts*, 74 N. C., 187. It appears that actual notice was given, for different parties appeared and made claim, so that there was an adjudication. Under such circumstances, is there anything in the law which requires the court to hold that the issuing of a newspaper *on Sunday morning* is so clearly forbidden by law as to taint and make void everything contained in it? It is clear that the law requiring the notice to

be given (before cited) makes no exception as to *Sunday news-papers.* The words are, "a newspaper of the county or other nearest gazette." The "Dispatch" certainly was "a newspaper of the county."

Nor do we think that the words, "The first week in every month," must be construed so as to require such notice to be published in a daily paper every day of the week. The law must have contemplated publication in a weekly paper. The act of 1779 (5 *Stat.*, 47) required the publication in such cases to be made in the "City Gazette," a daily newspaper of the city of Charleston; but in 1839 (11 *Stat.*, 37) the law was changed so as to require the publication "in a newspaper of the district where the lands are situated." Many of the counties of the State have no daily newspaper, and in those no legal notice could be given, if the construction contended for were the correct one. Besides, in any view, the defect could be nothing more than an irregularity. See *Maddox* v. *Sullivan,* 2 Rich. Eq., 7 ; 44 A. D., 234.

Section 663, Gen. Stat., declares that "No civil or criminal process shall be served on Sunday except for treason, felony, or breach of the peace." We do not think it could be properly affirmed that the *notice* to the world required in proceedings of escheat is, in the proper sense, "process," or in this case was "served" on Sunday. See *Genobles* v. *West,* 23 S. C., 168. Section 1631, Gen. Stat., declares that "No tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business, or work of their ordinary callings upon the Lord's day, commonly called the Sabbath, or any part thereof (works of necessity or charity only excepted) ; and every person, being of the age of fifteen years or upwards, offending in the premises, shall for every such offence forfeit the sum of one dollar." And section 1632 is in these words : "No person or persons whatsoever shall publish, cry, show forth, or expose to sale any wares, merchandise, fruit, herbs, goods or chattels whatsoever upon the Lord's day, or any part thereof, upon pain that every person so offending shall forfeit the same goods so cried or showed forth or exposed to sale," &c.

We cannot see that the latter section has any application to

the case. There is no question here as to the forfeiture of any "wares or merchandise" exposed for sale, &c. Then as to the former section, which forbids work on Sunday, upon pain of the forfeiture—a personal money penalty—is that not the end of the law as to the work done? Nothing is said as to the effect upon the work, which cannot, like a contract, be declared void. "A penalty or penal sum is a sum of money payable as an equivalent for an injury." (*R. & L. Law Dict.*, "Penalty.") But if we assume that the work done is also affected by the fact that it is forbidden under penalty, what work was done here on Sunday? There is nothing in the record which shows that any of the printing or getting up of the paper was done on Sunday. The "Case" states that "upon the return of said inquest the clerk caused to be advertised in a newspaper of the said county called the 'Sunday Dispatch,' the same being a weekly newspaper issued on Sunday." We cannot therefore assume that any of the work on the paper was done *on Sunday*, except the simple "issuing" of it—that is to say, the distribution of it among the subscribers who had previously contracted to have it delivered—an operation not unlike that of distributing letters from the mail.

We cannot hold that that alone was sufficient to make void every issue of the paper, and thereby annulling and striking out every notice published in it; especially after the judgment of escheat had been rendered, which necessarily recognized the publication. Mr. Freeman, on Judgments, at section 126, says: "There is a difference between a want of jurisdiction and a defect in obtaining jurisdiction. * * * In case of an attempted service of process, the presumption exists that the court considered and determined the question whether the acts done were sufficient or insufficient. If so, the conclusions reached by the court, being derived from hearing and deliberating upon a matter which, by law, it was authorized to hear and decide, although erroneous, *are not void.* * * * Where there has been an insufficient publication, or an entire failure to publish, the proceedings are not so invalidated as to be made void." See many authorities in note of Freeman, and *Darby & Co.* v. *Shannon*, 19 S. C., 537.

The case of *Shaw* v. *Williams* (87 Ind., 158; 44 Am. Rep., 756) bears no analogy to this. That was a proceeding by a

defendant in execution to enjoin the sale of his lands under an advertisement by the sheriff in a Sunday newspaper. The notice claimed to be invalid was *after* and not *before* the judgment as here. Indeed, it may be well doubted whether the purchaser at sheriff's sale—a stranger to the record—could be heard at all as to the alleged insufficiency of a notice lying back of the judgment. As was said by Mr. Justice McIver in the case of *Darby & Co.* v. *Shannon, supra:* "It seems to me that the judgment of Cole & Co. was not open to the attack of the plaintiffs, inasmuch as the only person who could take advantage of the alleged insufficient service of the summons was the defendant [in that judgment] Shannon."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.