## STATE *v.* AKUM GRIFFICE.

Matters which go to the incompetency of a grand jury, may be excepted to after bill found, if it is done at the earliest opportunity afterwards, which clearly is. upon the arraignment, when the defendant is first called upon to answer.

Where it appears that nine of the grand jury, who found the bill, had paid no taxes for the previous year, as required by chap. 17, sec. 229, Bat. Rev., and that another was under twenty-one years of age, if it is objected to in apt time, the bill will be quashed.

When an indictment is quashed, it is competent and proper for the court to require the defendant to give bail to answer the charge. Those against whom there is a well grounded suspicion of crime, should not be allowed to escape without an investigation.

(*State* v. *Haywood*, 73 N C. Rep. 437; *State* v. *McIntyre*, 2 Car. L. Repos. 28; and *State* v. *Seaborn*, 4 Dev. 305, cited and approved.)

CRIMINAL ACTION, charging an assault, with intent to commit rape, tried before his Honor, Judge *Kure*, at the Fall Term, 1875, of PASQUOTANK Superior Court.

All the facts pertinent to the points raised and decided in. this court, are fully set out in the opinion of Justice Bynum.

For certain reasons assigned, the defendant moved to quash the indictment. The court allowed the motion, and the So- licitor for the State appealed.

The counsel for the defendant then moved, that the defen-- dant be discharged from custody. His Honor refused to al- low this motion, whereupon the defendant appealed.

*Attorney General Hargrove* and *Smith*, for the State. *Bledsoe*, for defendant.

Bynum, J. When the prisoner was being arraigned, and it was demanded of him whether he was guilty or not guilty of the crime charged, his counsel objected that he ought not to be called upon to answer, for that the indictment was not found by a legally constituted grand jury. The case states that "this objection was waived for the moment, and the pris- oner was arraigned and plead not guilty." A motion was then made by the prisoner's counsel to quash the indictment for the reason before alleged, and the following facts were found, and do not appear to have been disputed, to-wit: That the first Monday in September, 1874, was the last time the jury list was revised, and that then many names were put into the box which were not upon the tax list; that the names of others who had not paid taxes for the year preceding the first Mon- day in September, 1874, were put in the box; and that the names of others were put in, who were not twenty-one, and of others who did not reside in the county. It was also shown that when the jury list was last revised on said first Monday of September, 1874, the Commissioners exercised no discre-. tion in the application of any moral or intellectual test of fit- ness, but that all the names were put in the box without any regard to moral character, intelligence or the payment of taxes. the preceding year. It was further found that upon the grand

jury which found this bill of indictment, there were nine persons who had not paid taxes for the year preceding the first Monday of September, 1874, and there was one who was under twenty-one years of age, when the bill was found, which was at the August Term, 1875.

1. Was the objection by the prisoner taken in apt time and manner?

When the case of one charged with an offence, is to come before a particular grand jury, it is the general doctrine, with many exceptions, however, that he may be present at its organization and makes challenges either to the array or to the pollls, for cause. But this practice has never obtained in North Carolina, and would be attended with such inconveniences that to allow it would be of doubtful policy. Obviously, however, it would be a great wrong to deny to defendants all opportunity of objecting to the incompetency of the accusing tribunal. If lawful, it would not be practicable, in general, for the defendant to make objection prior to the finding of the bill, inasmuch as the charge is usually .preferred by the grand jury without his knowledge or presence, and the alleged offence might even have been committed after the organization of the grand jury.

While, therefore, much difference of opinion has existed, and the decisions in the American courts have been conflicting on the question, whether, after bill found, the defendant can take advantage of the incompetency of the grand jury, who found it, the better opinion seems to be, that matters which go to the incompetency of the grand jury, may be excepted to after bill found, if it is done at the earliest opportunity afterwards, which clearly is, upon the arraignment, when the defendant is first called upon to answer. Such was the holding of this court at the last term in the *State* v. *Haywood*, 73 N. C., 437, following the *State* v. *McIntyre*, 2 Car. L. Rep., 28, and *State* v. *Seaborn*, 4 Dev., 305.

As the objection in this case was upon the arraignment, and

before pleading over to the felony, and the facts relied upon
as affecting the competency of the grand jury, are set forth
agreed upon, we think the objection was taken in apt time and
manner, though, as we said in Haywood's case, the more regu-
lar way of raising the questions here made, would have been
by a formal plea in abatement.

2. Great and inexcusable irregularities were committed by
the County Commissioners in making up the jury list, but this
court can notice only such as affected the composition of the
grand jury, which was drawn from that list.    Battle's Revisal,
chap. 17, sec. 229, provides that "the Commissioners of the
several counties, at their regular meeting on the first Monday
of each year, shall cause their clerks to lay before them the
tax returns of the preceding year for their county, from which
they shall proceed to select the names of such persons *only* as
have paid tax for the preceding year, and are of good moral
character and of sufficient intelligence."    The list of names
thus selected constitutes the jury list, and from it the grand
and petit jury are drawn.    If the list thus made up happens
to contain the names of some, disqualified by the statute from
being jurors, this fact does not vitiate the jury list, so as to
render incompetent a grand jury drawn from it.    For it may
well be that none of the disqualified persons would be drawn
upon the jury, in which event no objection could be raised to
its competency.    To hold that a jury list which contains the
names of some who are disqualified, so poisons and corrupts
the whole list that a lawful grand jury cannot be made from
it, would greatly embarrass, if not defeat, the due administra-
tion of justice.    These statutory regulations for making up
the list from which the several juries are to be taken have
ever been held in this State not to be mandatory but merely
directory, and so the statute itself (sec. 229) in effect declares.
But the question in this case is, not as to mere irregularities
in constituting and empannelling the grand jury, which, in
general, cannot be objected to after an indictment has been

found and received.   It is as to the competency of individual grand jurors, of the number of those finding this bill.   Nine of these had not paid tax for the year preceding the first Monday of September, 1874, when their names were put upon the jury list.   One other was under twenty-one years of age when the bill was found.

Hawkins says, that if one of a grand jury who find an indictment, be within any of the exceptions of the statute, he vitiates the whole, though ever so many unexceptionable persons join in the finding, and the prisoner may plead such matter in avoidance of the indictment and plead over to the felony.   B. 2, chap. 25, secs. 26, 28.   To the same effect is Chitty, Cr. Law 307.   The language of our statute is strong; " from which " (tax list) they shall proceed to select the names of such persons *only* as have paid tax, &c., and are of good moral character and of sufficient intelligence."   The restrictions fall fully within the rule as laid down by Hawkins and Chitty, and followed by the weight of authority in this country.   *State* v. *Vanhook*, 12   Texas, 252, where the question is fully and ably discussed.   Yet in the light of our statute, the question is not without difficulties, for it is equally prescribed that the jurors shall be of "good moral character and sufficient intelligence."   Can the defendant upon arraignment plead in abatement, the want of good moral character or sufficient intelligence in one or more of the grand jury ? If so, on the one hand such challenges would raise questions of fact calculated to embarrass the course of justice, in all trials where the delay or defeat of justice is sought.   On the other hand, undoubtedly an idiot or lunatic, or felon, should not be a part of the accusing body.   Between these conflicting difficulties, the safer and more humane choice is to risk the inconveniences or even delays which may be incurred in receiving the plea and deciding the questions of fact raised preliminary to the trial, rather than adopt the alternative stern and harsh rule, which must often work great injustice

and wrong. The defendant must have the right to have the accusation against him performed by men unexceptionable in respect of qualification. In no other way can this right be secured than by entertaining the plea upon the arraignment. But little inconvenience or delay in the trial can be apprehended, as the court would, upon the spot, try the questions raised, and if not well founded, proceed with the trial, otherwise the bill would be abated and a new bill sent immediately. The nine non-tax paying jurors were therefore incompetent, and upon the exception taken, vitiated the bill found.

One other juror was under the age of twenty-one at the finding of the bill, and this is made another exception to the indictment.

There is no statute in this State prescribing at what age persons become competent jurors, but it is a universal principle of the common law, that a person under twenty-one, is an incompetent juror. He must be *liber et legalis homo,* exempt from legal servitude to master or parent. It never was the law that an infant, one declared to be unfit to manage his own affairs, could be invested with power to dispose of the lives and property of others. This objection also is fatal to the indictment.

3. When the court quashed the indictment, the prisoner's counsel moved for his discharge. The court refused the motion and required bail for his appearance at the next term of the court. It was both competent and highly proper in the court to do so. Those against whom there is a well grounded suspicion of crime, should not be allowed to escape without an investigation.

There is no error, and the judgment is affirmed.

PER CURIAM.                                    Judgment affirmed.