STATE v. ALBERT COLBERT.

Quashing indictments is not favored. It releases recognizances and sets the defendant at large, where, it may be, he ought to be held to answer upon a better indictment:

HENCE, it is a general rule, that no indictment which charges the higher offences, as treason, or felony, or those crimes which immediately affect the public at large, as perjury, forgery, and the like, will be thus summarily dealt with.

INDICTMENT for *Perjury*, tried before KERR, J., at Spring Term, 1876, of GUILFORD Court.

The prisoner was held to answer upon the following bill :

" The jurors for the State upon their oath present, that heretofore, to-wit, at an election opened and held in the city of Greensboro', in the county of Guilford aforesaid, on the 6th day of August, A. D. 1875, for the purpose of electing members of a Constitutional, Convention, in the State aforesaid, which was on the day and at the place prescribed by law, for the purpose aforesaid, which said election was opened and held according to law, when came one Milton Banks, and offered to vote for members of the aforesaid Convention, and it then and there appearing that the name of the said Milton Banks was not registered as the law directs, he, the said Milton Banks, was not permitted to vote;

STATE v. COLBERT.

upon which he, the said Milton Banks, made affidavit to the effect, among other things, that he the said Milton Banks, voted in Gilmer Township, in the year 1874; in support and confirmation of which statement one Albert Colbert, of the County and State aforesaid, produced and offered the following affidavit, to-wit:

'Albert Colbert being duly sworn, deposes, that he personally knows that Milton Banks voted in Gilmer township last year.

his

ALBERT X COLBERT,

mark.

Sworn and subscribed

 before me, August 5th, 1875,

  J. N. NELSON, C. S. C.

  By ABRAM CLAPP, D. C.',

which said affidavit is sworn and subscribed before J. N. Nelson, Clerk of the Superior Court and Judge of the Probate Court, in and for said County, by Abram Clapp, Deputy Clerk, he, the said J. N. Nelson, Clerk and Probate Judge as aforesaid, through Abram Clapp, deputy as aforesaid, being fully and lawfully authorized and empowered to administer oaths on this behalf; the said affidavit falsely and corruptly stating that he, the said Albert Colbert, personally knew that the aforesaid Milton Banks voted in Gilmer Township, in the County and State aforesaid, last year, meaning the year 1874, when in truth and in fact, the said Albert Colbert did not know that the said Milton Banks voted in said township, in the year 1874, it appearing from a record of said election that the said Milton Banks did not vote in the said township in the year 1874.

And the jurors aforesaid, upon their oaths aforesaid, do further present that it became and was a material question, at the taking said oath by the said Albert Colbert, whether he, the said Albert Colbert, knew that the said Mil-

24

STATE *v.* COLBERT.

ton Banks voted in Gilmer Township, in the year A. D. 1874, or not.

And so the jurors aforesaid, upon their oaths aforesaid, do say, that the said Albert Colbert, on the said 5th day of August, in the year of our Lord 1874, in the City of Greensboro, in the County of Guilford aforesaid, before the said J. N. Nelson, Clerk of the Superior Court and Judge of the Probate Court, in and for said county, by Abram Clapp, Deputy Clerk as aforesaid, then and there having full power and authority to administer oaths on this behalf, of his own most wicked, malicious and corrupt mind and disposition, and by his own act, in manner and form aforesaid, wilfully and corruptly, did commit wilful and corrupt perjury, to the great displeasure of Almighty God, in contempt of the laws, to the evil example of all other persons, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

F. N. STRUDWICK,<br>
*Solicitor.*

After the jury was empanneled the prisoner having plead *not guilty,* a juror was withdrawn, and on motion the indictment was quashed. From this judgment of the Court the Solicitor appealed.

*Bledsoe,* with Attorney General Hargrove, submitted:

I. (*a*) Bill charges that defendant made oath before an officer legally qualified to administer an oath.

(*b*) That the matter sworn to was material to the question to be decided; Suf. *State* v. *Davis,* N. C. Rep. 69, 495.

(*c*) And " of his own most wicked, malicious and corrupt mind and disposition, and by his own act *in manner and form as aforesaid,* wilfully and corruptly did commit wilful and corrupt perjury," &c.

II. Was the officer legally qualified to administer an oath?

(*a*) Ministerial functions of an office may be performed by a deputy at common law.

(*b*) Rev. Stat. chap. XIX, sec. 15; Rev. Code, chap.XIX, sec. 15; and Bat. Rev., chap. XVII, sec. 141, recognize the authority of deputies, to perform the ministerial functions of the office of Clerk of the Superior Court.

(*c*) Rev. Stat., chap. LXXIX; Rev. Code, chap. LXXVII; and Bat. Rev., chap. LXXVII, recognize the rights of a deputy of any civil officer to administer an oath, in any case where the principal might do so.

(*d*) If there was any law by which a deputy might be appointed and exercise the ministerial functions of the office prior to the adoption of the present Constitution, the same is still in force.   Const., Art. IV, sec. 24.

III. (*a*) If any person shall wilfully and corruptly commit perjury, &c., or in any deposition or affidavit taken pursuant to law, &c.   Bat. Rev., chap. XXXIII, sec. 50.

(*b*) Laws 1874–'75; Bat. Rev., chap. LII, sec. 15.

IV. (*a*) Under general law the officer had authority to administer the oath and the oath was administered.

(*b*) The indictment charges that it was upon a material point and was corruptly false.

Under the law of 1874–'75, the registrars or judges of election might legally hear the evidence.   It was furnished to be heard and was material to be heard.

It is sufficient if it be shown that he was admitted as a witness and did testify.   3 Greenl., III, § 191; *State* v. *Molier*, 1 Dev., 263.

*Tourgee,* for the prisoner:

I. The affidavit alleged to have been, false was not taken before an officer authorized by law to administer an oath in such cases.

(1) By the laws of 1874–'75, the election for delegates to the Constitutional Convention, was required to be held " *in the same manner as is provided by law for the election of members of the House of Representatives.*" Laws 1874–'5, chap. CCXXII, sec. 3. The provisions governing such elections are to be found in Bat. Rev., chap. LII, and the specific provision applicable to this question is contained in sec. 15 of said chapter, page 439.

By this section the power to administer oaths in regard to the qualifications of electors is conferred upon the Judges of Election and the Registrars; the Judges are not authorized to hear such questions upon affidavits taken *ex parte*, not in the presence of the parties whose rights are to be affected, and manifestly could not be authorized to do so without opening the door to unlimited fraud. This grant of power must, therefore, be exclusive.

(2) There is no provision of law for the appointment and qualification of deputies to act for the Clerks of the Superior Court. There *was* such a provision for a deputy for the old Superior Court of Law. The present is a *new* court, in its powers, organization and functions; the Clerk is an officer provided for in the Constitution, his functions are largely judicial and he cannot *have* a deputy in many of them.

Nor can he have a deputy in *any* of them except by an express provision of law designed to effect that purpose.

II. The affidavit charged to have been false was immaterial to any issue the Judges of Election were authorized to try.

(1) The only affidavit which can be material to the question of a person's right to vote is *his own.* *VanBokkelen* v. *Wilmington,* 73 N. C. Rep., 226.

(2) The bill charges that the affidavit was offered " at an election begun and held in the City of Greensboro ;" the af-

fidavit is that Colbert knew him to have voted "*in Gilmer Township*" the year before. How could the fact of his having voted in "Gilmer Township," (which from all that appears in the bill may have been in another county) be material upon an inquiry as to his right to vote in *Greensboro?*

(3) The bill does not negative the allegation that Milton Banks voted in Gilmer Township the year before, but only says "it appearing from a record of the election that he did not vote in said township in the year 1874."

READE, J. Quashing indictments is not favored. It releases recognizances, and sets the defendants at large, where, it may be, he ought to be held to answer upon a better indictment. It is, however, allowable; and in cases where it puts an end to the prosecution altogether, it is advisable, as where it appears that the court has not jurisdiction, or where the matter charged is not indictable in any form. Mr. Chitty, in his criminal law, page 300, says: "The courts usually refuse to quash on the application of the defendant where the indictment is for a serious offence, unless upon the plainest and clearest grounds; but will drive the party to a demurrer, or motion in arrest of judgment, or writ of error."

It is, therefore, a general rule that no indictment which charges the higher offences, as treason or felony, or those crimes which immediately affect the public at large, as perjury, forgery, &c., will be thus summarily dealt with.

Here the crime charged is perjury at an election—a matter of great importance to the public; and the example is a bad one, and the effect upon the public injurious, to allow the defendant to escape upon matters of form.

The indictment is very informal, and probably no judgment against the defendant could be pronounced; but still the court had jurisdiction, and the matter intended to be

charged is a crime which greatly concerns the public, and therefore the defendant ought to have been held and tried upon a sufficient indictment. The bad impression left upon the public from quashing the indictment must be, that one may commit perjury in elections and not be punished.

The indictment charges that at a certain election, &c., one Milton Banks offered to vote, and because his name " was not registered as the law directs, he was not permitted to vote." How or by whom he was not permitted to vote, whether by those who were around the polls, or by the poll-holders, is not charged. But suppose it to have been the poll-holders, upon a regular challenge by themselves, or by the bystanders, and that the trial was in all things regular, and he was rejected because he was not registered, then the trial was at an end, and Banks was no longer before the poll-holders for any purpose. Now, it is evident that, to have made any oath perjury, it must have been taken or used upon that trial by the poll-holders. But it is not charged that any oath was taken or used before them, but that they rejected him *because* he was not *registered*. Surely it cannot be left to inference whether the oath was taken or used before the poll-holders, and upon the trial, and before the rejection. If we are to look to inferences they are strong that the oath was taken and used after the trial and rejection, and when there was nothing whatever on trial.

The indictment charges that Banks was rejected, and then as follows: Upon which—that is, upon and after his rejection—he, the said Milton Banks, made affidavit to the effect that he had voted, &c., in 1874. And in support of that statement the defendant produced and offered an affidavit, &c. It is not charged before whom Banks made his affidavit, or for what purpose, whether to satisfy the crowd or the poll-holders, or that there was any trial then pending, or that the application which had been once rejected had

been renewed. It is not charged that the poll-holders took any action upon the affidavit, and either received the vote or rejected it the second time. From which it must be inferred that it was not before them for any official purpose, as they took no action upon it whatever.

It is not charged that the defendant took or offered any oath before the poll-holders, on the trial or before the rejection ; but, after the rejection, as we must infer, he went before the clerk of the court and made oath that he knew that Banks had voted the year before, and this written oath he produced in support of Banks's statement that he had voted the year before. But before whom it was offered is left to inference. And what was expected to be accomplished by it is not charged, nor is it charged that the poll-holders took any cognizance of it.

It is charged that the defendant took his oath before the clerk of the Superior Court, and that " it became and was a material question at the taking of said oath " whether the defendant did know that Banks had voted the year before. But it is not stated how it could have been material. There was no trial before the clerk of any sort, nor is it charged that it was taken to be used in some trial elsewhere, nor that it ever was so used.

We do not wish to be understood that, in charging the *materiality* of the testimony that it is necessary to state the *details*, but it must be charged at least that it was in some trial where it can be seen that it might have been material.

So it appears that there was abundant cause for his Honor's declaring the indictment informal and insufficient, but not for quashing it. There ought to be a trial. If the solicitor will prepare a sufficient bill, then, if convicted, the the defendant may be punished. If the solicitor will try upon an insufficient bill—which is not to be supposed—then, although convicted, the judgment would be arrested.

There is error. This will be certified to the end that such further proceedings may be had as the law requires.

PER CURIAM.                    Judgment accordingly.