## STATE v. J. MARION CARLAND.

*Homicide—Discharge of jury before verdict—Jeopardy—Trial— Jurors—Judge's Charge.*

1. The jury were considering of their verdict in a capital case for ten days, and upon twice coming into court and being polled, each time they declared the jury would never agree, and the court directed a juror to be withdrawn and a mistrial entered; *Held*, no error, and the prisoner was not in jeopardy. The facts found by the court are conclusive, but the law reviewable.

2. Where the trial in such case was removed from one county to another, the prisoner has no right to have the whole transcript of the record read to the jury, and the judge properly refused to allow more than the indictment and so much of the record as showed the jurisdiction of the court to be read.

3. A juror summoned on a *special venire* is qualified to serve if he be a freeholder only. THE CODE, §1738.

4. But tales-jurors and those of the original panel are required not only to be freeholders, but to have paid their taxes for the preceding year, which, under section 1722, is the year preceding the one in which the tax returns, from which jurors are selected, are laid before the county commissioners. *State* v. *Watson*, 86 N. C., 624, corrected.

5. The finding of the judge in the court below as to whether a juror has paid such tax is not reviewable on appeal.

6. On trial for murder the judge charged the jury, among other things, that the prisoner is not required to prove matters of excuse or mitigation beyond a reasonable doubt, but to the satisfaction of the jury; "but the

degree of proof is not so far relaxed that he may establish them by a bare preponderance of evidence, but must do so to the satisfaction of the jury"; *Held*, no error. The meaning of the instruction is, that the jury must be *satisfied;* and if not satisfied, a *bare* preponderance of proof will not do.

(*State* v. *Ellick*, 2 Wins., 56; *State* v. *McGimsey*, 80 N. C., 377; *State* v. *Washington*, 89 N. C., 535, and cases cited; *State* v. *Whitley*, 88 N. C., 691, and cases cited; *State* v. *Griffice*, 74 N. C., 316; *State* v. *Wincroft*, 76 N. C., 38; *State* v. *Willis*, 63 N. C., 26, approved; *State* v. *Peter Johnson*, 3 Jones, 266, *Commonwealth* v. *York*, 9 Metc., 93, and *State* v. *Watson*, 86 N. C., 624, corrected).

INDICTMENT for murder tried at Spring Term, 1884, of HENDERSON Superior Court, before *Graves, J.*

This case was removed from Buncombe, and the whole record was made a part of the statement of the case on appeal. When the solicitor for the state announced his readiness for trial, the prisoner moved for his discharge upon the ground that he had heretofore been in jeopardy upon the same charge which he was then called upon to answer. Motion overruled, and the prisoner excepted.

The prisoner then moved the court to adjudge upon the record that he had heretofore been tried and acquitted of the crime charged in the indictment, and that, having been so acquitted, he could not be put upon another trial for any offence under this bill of indictment. Motion overruled, and the prisoner excepted.

The prisoner asked the court to adjudge upon the record that he had been heretofore acquitted of the charge of murder, and to adjudge that he could not then be put on his trial for any greater offence than manslaughter. His Honor overruled this motion, and directed the trial to proceed upon the charge of murder as preferred in the indictment. Prisoner excepted.

To sustain the preceding motions, the prisoner relied upon the record of the proceedings had before Judge Avery in the superior court of Buncombe, before the case was transferred to Henderson county, in which it appeared that a mistrial had been ordered upon the ground that the jury were unable to agree upon a verdict. The facts in reference to this are stated in the opinion here.

· In selecting the jury, one Dalton, summoned on the special venire, was challenged, and being sworn on his *voir dire*, said, "I owe one tax; I have paid all except the last tax." The judge was of opinion that it did not appear that the juror had not paid his tax for the preceding year, and adjudged the cause of · challenge insufficient. The peremptory challenges allowed to the prisoner were exhausted before the jury was completed. The prisoner excepted.

Upon proceeding to empanel the jury, the prisoner asked. that the entire record be read in the hearing of the court and jury. The court directed the bill of indictment and so much of the record as was necessary to show the jurisdiction of·the court to be read, and that no more should be. The prisoner excepted, insisting that the whole transcript should be read.

There was only one exception taken to the instructions given to the jury: The evidence as to the killing was full, tending to show a legal provocation by an assault and mutual combat, and that the prisoner acted upon the principle of self-defence. The court charged the jury that "when the law devolves upon the prisoner the burden of proof, it relaxes the rule as to the degree of proof; for while the prosecution is held to the rigid rule, and required to satisfy the jury beyond a reasonable doubt, when the prisoner comes to show his matters of excuse or mitigation, he is not required to prove these matters beyond a reasonable doubt, but he is required to prove them to the satisfaction of the jury, but the degree of proof is not so far relaxed that he may establish his matters of excuse or mitigation by a bare preponderance of proof, but must do so to the satisfaction of the jury." This instruction was excepted to upon the ground the court charged that a greater degree of proof was required of the prisoner in showing excuse or mitigation than a bare preponderance of the evidence.

The jury found the prisoner guilty · of manslaughter, and he appealed from the judgment pronounced.

*Attorney-General,* for the State.

*Messrs. M. E. Carter, J. H. Merrimon* and *Reade, Busbee & Busbee,* for prisoner.

ASHE, J. The first three exceptions taken by the prisoner related to the right claimed by him to be discharged by consequence of the proceedings had, when he was theretofore on trial under the same bill of indictment, in the superior court of Buncombe county, before the case was removed to the county of Henderson. They embrace these grounds:

1. That he had theretofore been put in jeopardy of life for the same offence.

2. That he had been acquitted of every offence charged in the bill of indictment, and that he could not again be put on trial for any offence charged in the bill of indictment.

3. That he had been theretofore acquitted of the crime of murder, and that he could not be put on trial again for any greater offence than manslaughter.

There is no force in any of these exceptions: As to the jeopardy, it is now well settled that even in capital trials the superior courts have the power to grant a mistrial whenever a proper case occurs for its exercise. And whenever a judge undertakes to exercise the power, he must distinctly find the facts and set them out in the record. When he does so, the facts are conclusive, but the law is reviewable. *State* v. *McGimsey,* 80 N. C., 377.

In this case the judge carefully complied with the requirements of the law. He finds as facts, that the case was committed to the jury in the afternoon of Friday, March 23, 1883, being Friday of the second week of the term. The jury were put in charge of a sworn officer, and were kept together until Saturday, March 31, 1883, being Saturday of the third and last week of the term, about four o'clock in the afternoon, when the jury were brought into court, and polled in presence of the prisoner, and in response to questions propounded to each juror

by the court, six of the jurors said that the prisoner was not guilty, and six said he was not guilty of murder, but was guilty of the felonious slaying. The jury asked for further instructions, and the court, after instructing them upon the point about which instructions were asked, sent them out again in charge of the officer, and entered an order upon the minutes of the term that the term of the court should be prolonged until Monday, April 2, 1883, unless the jury should sooner agree as to their verdict. On Monday, April 2, 1883, at ten o'clock A. M., the jury came into court, and they were again polled, and seven of them said the prisoner was not guilty, and five of them said he was not guilty of murder but was guilty of the felonious slaying. And all of the jury, being severally interrogated by the court, declared that they did not believe the jury would ever agree. The court found as a fact that the jury could not agree, and thereupon ordered that a juror be withdrawn and a mistrial had.

There is no error in this ruling. His Honor strictly complied with the requirements of the law, and the facts of the case as found by him, without question, warranted the course pursued. *State* v. *Jefferson*, 66 N. C., 309; *State* v. *Washington*, 89 N. C., 535; *State* v. *Honeycutt*, 74 N. C., 391. In the latter case the jury had the case six days, and on Saturday of the second week of the term came into court, and, being polled, it was found as a matter of fact that they could not agree, and it was held that the judge committed no error in withdrawing a juror and directing a mistrial. But this is a stronger case than that for the state; for here, the jury were twice polled, and had the case ten days before the mistrial was ordered.

We hardly think it necessary to notice the exception taken upon the ground of a former acquittal, for there could be no acquittal without a verdict of not guilty; and here, there was no verdict. There could be none so long as the jury disagreed.

The prisoner's fourth exception was to the refusal of the court to allow the entire record of the proceedings connected with the

trial in Buncombe county to be read in the hearing of the jury. His Honor restricted the reading of the record to the bill of indictment and so much of the record as showed the court of Henderson had jurisdiction, and forbade that part of the record in regard to the mistrial to be read. In no event could it be read in the hearing of the jury except as evidence that there was no issue or question before the jury, to which it was applicable as evidence. Whether the prisoner had been once in jeopardy, or had been acquitted, were questions exclusively for the court.

The fifth exception was to the refusal of His Honor to allow the prisoner's challenge to Dalton, who had been summoned as a juror on the "special venire," and was challenged for the cause that he had not paid his taxes for the preceding year. This exception is groundless for several reasons:

1. Because the act of assembly only requires that the persons summoned on a "special venire" should be *freeholders*. The Code, §1738. They are not tales-jurors, who are required, not only to be freeholders, but to have paid their taxes for the preceding year, as is required of jurors on the original panel. *State* v. *Whitley*, 88 N. C., 691; *Lee* v. *Lee*, 71 N. C., 139.

2. Because the tax of the preceding year, so far as relates to this case, refers to the tax due for the year preceding the first Monday in September, 1883. Act of 1868, ch. 95, §1; The Code, §1722; *State* v. *Griffice*, 74 N. C., 316. The juror stated that he had paid all his taxes but the last. The last tax was that due on the first of September, 1883, but the tax of the preceding year was that which was due on the first of September, 1882; and that he had paid. So that the judge did not err in holding that he had paid his tax for the preceding year.

3. Because, even if His Honor was in error, his ruling upon the question was conclusive and not reviewable as to the fact. *State* v. *Wincroft*, 76 N. C., 38.

We take occasion here to correct an inadvertence fallen into by the court in the case of *State* v. *Watson*, 86 N. C., 624, where it was said "the preceding year" referred to the year pre-

43

ceding the finding of the bill of indictment. The qualification of the juror was not the question then before the court, but only whether the exception had been taken in apt time; and consequently the court did not give a critical examination to the question of qualification.

The next and last exception of the prisoner was to the instructions given by His Honor to the jury, and the ground of the exception is that the court charged that a greater degree of proof was required of the prisoner in showing mitigation or excuse than a bare preponderance of evidence. The charge was: "When the prisoner comes to show his matters of excuse or mitigation, he is not required to prove these matters beyond a reasonable doubt, but he is required to prove them to the satisfaction of the jury; but the degree of proof is not so far relaxed that he may establish his matters of excuse or mitigation by a *bare preponderance* of proof, but must do so to the satisfaction of the jury."

We are unable to see in what respect the charge of His Honor is obnoxious to the prisoner's exception. The plain meaning of the instruction is, that a *bare* preponderance of proof will not do to show matters of mitigation or excuse, unless it produces satisfaction of their truth in the minds of the jury. We can well conceive of cases where there may be a bare or slight preponderance of proof on one side, which yet fails to produce satisfaction, and still leaves the mind in an uncertain and dubious state. His meaning evidently is, and so we think any one would take it, that the jury must be *satisfied;* and if not satisfied, a bare preponderance of evidence will not do.

In giving the charge, His Honor seems to have followed with particularity the rule laid down by this court in *State* v. *Willis,* 63 N. C., 26. Before that case was decided, there had preceded it the *Commonwealth* v. *York,* 9 Metc., 93, and *State* v. *Peter Johnson,* 3 Jones, 266. In the former case the court held that where there was any evidence tending to show excuse or mitigation, it is for the jury to draw the proper inferences of fact from

STATE *v.* CARLAND.

the whole evidence, and to decide the fact on which the excuse or extenuation depends, according to the *preponderance* of evidence; and in the latter, that it was incumbent on the prisoner to establish the matter of excuse or extenuation beyond a reasonable doubt. The error in both of these cases is corrected by this court in *Willis'* case; Judge BATTLE, speaking for the court, said: " We prefer to stand *super vias antiquas,* and to adhere to the rule laid down in *State* v. *Ellick,* 2 Winst., 56. In that case, the erroneous statement we had inadvertently made in *State* v. *Peter Johnson,* that it was incumbent on the prisoner to establish the matters of excuse or extenuation beyond a reasonable doubt, is corrected. In it, is also corrected what we also consider as erroneous in the decision of the court in *Commonwealth* v. *York,* that the matter of excuse or extenuation which the prisoner is to prove must be decided according to the preponderance of evidence. It is more correct, we think, that they must be proved to the *satisfaction* of the jury." It was so held in *State* v. *Ellick,* where the court say, when it is proved that one has killed intentionally with a deadly weapon, the burden of showing justification, excuse or mitigation is on him, and the jury must be *satisfied* by the testimony that the matter offered in mitigation is true. And the same principle is laid down in Foster, at page 290, where it is said, whoever would shelter himself under the plea of provocation must prove his case to the *satisfaction* of the jury. The presumption of law is against him till the presumption is repelled by contrary evidence. This exception of the prisoner cannot be sustained without overruling the case of *State* v. *Willis, supra,* which has been repeatedly approved by adjudications of this court. Let this be certified.

No error.	Affirmed.