### STATE v. HARWELL.

(Filed December 3, 1901.)

1. INDICTMENT—*Quashal—Slander of Innocent Women—Discretion—Judge.*

    The quashal of an indictment is discretionary with the trial judge.

2. INDICTMENT—*Slander of Innocent Women—The Code, Sec. 1113.*

    An indictment for slander of innocent woman must charge that the defendant did attempt in a "wanton and malicious" manner to destroy the reputation of an innocent woman.

3. SLANDER—*Of Innocent Women—The Code, Sec. 1113.*

    To call a woman a damned bitch and say to her that "I have a quarter for you," is not *per se* criminal under The Code, Sec. 113.

INDICTMENT against Lawson Harwell, heard by Judge *W. B. Council,* at October Term, 1901, of the Superior Court of CATAWBA County. From a judgment of quashal, the State Solicitor appealed.

*Brown Shepherd,* for *Robert D. Gilmer, Attorney-General,* for the State.
*L. L. Witherspoon,* for the defendant.

FURCHES, C. J. This is an indictment under section 1113 of The Code, for the slander of an innocent woman. The statute provides "that if any person shall attempt, *in a wanton and malicious manner,* to destroy the reputation of an innocent woman," etc. And the bill of indictment charges that the defendant "unlawfully, wilfully and feloniously did attempt to destroy the reputation of Miss Beulah Gaither, she being an innocent and virtuous woman, by calling her a damned bitch, and I have a quarter for you, meaning thereby

that she was incontinent, this being said in the presence of third parties." The defendant moved to quash the bill, which motion was allowed, and the State appealed.

The defendant puts his motion upon two grounds: The insufficiency of the bill of indictment, and also upon the ground that the words spoken do not constitute a criminal offense under the statute. The words used are so offensive that they are calculated to create a feeling of resentment, and a disposition to say he deserves to be punished. And in such cases, there is danger of yielding to a sentiment that leads us from that careful consideration of the law that the case is entitled to. Therefore, in order that we may not do this, it is necessary that we should examine carefully the precedents and reason of the thing.

The bill does not follow the language of the statute, as it should do. And admitting that it has been held that bills for statutory offenses may be sustained without following the exact language of the statute, the words used must be the equivalent of the words of the statute. The word "feloniously" has no meaning in this indictment, as the offense created by the statute is only a misdemeanor, and not a felony, and the word feloniously must be treated as surplusage. The word "wilfully" usually means "stubbornly," and here could not mean more than defendant intentionally used this language. And does not necessarily mean that he did so "in a wanton and malicious manner." The word "unlawfully" does not import "wanton and malicious manner." State v. Morgan, 98 N. C., 641; State v. Tweedy, 115 N. C., 704. But the ground was taken for the State upon the argument, that if the bill was defective in the manner pointed out, it was error in the Court to quash, and State v. Flowers, 109 N. C., 841; State v. Skidmore, 109 N. C., 795; State v. Caldwell, 112 N. C., 854; State v. Colbert, 75 N. C., 368, were cited for this position.

In the case of *State v. Colbert,* it was held to be error to quash the bill. That case was for perjury, and the Court said *in high crimes such as treason and felony,* it was error to quash the bill, as it released the bail, and the defendant might escape. And Flowers' case, Skidmore's case and Caldwell's case, all being felonies, followed Colbert's case. And if it should be held that Colbert's case, and the other cases cited, and following Colbert's case, is correct, they are not authority for reversing the Court in this case, which is not treason or felony, but only a *misdemeanor.*

But with the greatest respect for the learned Court that decided Colbert's case, and the other following cases, we must say that they are not in harmony with the former opinions of this Court, and that the reason given for the decision is not tenable—"that the defendant might escape"—as it was perfectly within the power of the Court upon quashing the bill *to hold the defendant* until another bill could be sent. *State v. Griffice,* 74 N. C., 316; *State v. Roach,* 3 N. C., 540. In both of these cases the bill was quashed and the defendant held in bail. In *State v. Baldwin,* 18 N. C., 195 (Gaston, Judge), it is said that in indictments for heinous crimes, it is not usual to quash. But the right to do so is entirely discretionary with the presiding Judge, and he will not be reviewed except as upon a writ of error where he has quashed a good bill.

In the case of *State v. Roach, supra,* it is said: "It is proper to quash when the Court could not proceed to judgment. The law does not require a vain thing to be done, as it would be to try a defendant when the Court could render no judgment upon a conviction. Though it is said in *State v. Caldwell, supra,* that a motion to quash was properly overruled, but it was held to be proper to arrest the judgment after the defendant had been convicted. The bill, in our opinion, is de-

fective, and the judgment of the Court in quashing the bill of indictment must be sustained."

The language used by the defendant, though very offensive, is not, in our opinion, *per se,* criminal under the statute. To constitute the offense for which the defendant is indicted, he must have charged the prosecutrix of having had criminal intercourse in direct terms, or in words equivalent to that. In *State v. Moody,* 95 N. C., 671, the defendant said the prosecutrix "had promised to let him have criminal connection with her, and he intended to have that thing." The Court said this was not sufficient to constitute the crime, as it did not amount to saying that she had had criminal intercourse with him.

In *State v. Benton,* 117 N. C., 788, the defendant said of the prosecutrix that "she looks like she has had a miscarriage." The Court said this did not, *per se,* constitute a crime under the statute. That this language might have had some other meaning, and the defendant should have had the right to explain the matter to the jury.

The fact that the defendant said he had a quarter for the prosecutrix, of itself, did not amount to a criminal offense. That he said the prosecutrix was a "damn bitch," was mean and offensive, but does not necessarily amount to a charge that the prosecutrix had been guilty of sexual intercourse. Bitch, according to Webster's Unabridged Dictionary, means "a female dog, wolf or fox. 2. An opprobrious name for a woman, especially a lewd woman." Then, as these words do not primarily mean a woman, and secondarily being only an opprobrious name applied to a woman, when she is not a lewd woman, can it be said that they *necessarily* mean that the prosecutrix has had *sexual intercourse* with a man; although this language is more especially used as to a lewd woman? It seems to us that it does not. But taking both together, they may amount to the statutory offense, and upon

a proper bill should be submitted to the jury to say whether they do or not. But as they do not necessarily mean that the prosecutrix has had sexual intercourse, the Judge can not say they do.

No Error.

CLARK, J., dissenting. The indictment charged that the defendant "unlawfully, wilfully and feloniously did attempt to destroy the reputation of Miss Beulah Gaither, she being an innocent woman, by calling her 'a damned bitch,' and 'I had a quarter for you,' meaning thereby that she was incontinent, this being said in the presence of third parties." The defendant moved to quash the indictment because it did not charge a criminal offense. Motion allowed, and appeal by the State.

The Code, sec. 1113, makes it a misdemeanor for any person to "attempt, in a wanton and malicious manner, to destroy the reputation of an innocent woman, by words written or spoken, which amount to a charge of incontinency."

The word "bitch" is thus defined in Webster's International Dictionary: "1. Female of the canine kind, as of dog, wolf and fox. 2. An opprobrious name for a woman, especially a lewd woman. *Pope.*" The defendant did not mean to apply the first definition to her, and there can be no doubt that he meant the second, and to call her a "lewd woman," especially when coupled with the profane expletive and the addition of the words, "I had a quarter for you," which were clearly meant to convey the impression to the bystanders that she was a woman who had her price. We are told that his Honor quashed the bill on the ground that these words did not amount to a charge of incontinency. This was error. Whether the defendant used the words or not, and whether the prosecutrix was an innocent woman within the meaning of the statute as construed in *State v. Brown,* 100 N. C., 519, are questions of fact for the jury.

It is very questionable whether the words in the statute in a "wanton and malicious manner" are sufficiently charged by the words used in the indictment—"unlawfully and wilfully." *State v. Morgan,* 98 N. C., 641; *State v. Tweedy,* 115 N. C., 704. Though words of the same meaning as those used in the statute can be substituted in an indictment, it is best usually to follow the words of the statute. Still, an indictment should never be quashed for such defects, but a new bill should be sent. *State v. Flowers,* 109 N. C., 841; *State v. Skidmore, Ibid,* 795; *State v. Caldwell,* 112 N. C., 854; *State v. Colbert,* 75 N. C., 368. As the case goes back, the Solicitor may consider whether he shall not send a new bill in the words of the statute.

MONTGOMERY, J. I concur in the dissenting opinion.