## STATE v. JOEL LEVY.

(Filed 16 April, 1924.)

1. **Criminal Law—Homicide—Evidence—Questions for Jury—Courts—Appeal and Error.**

   Where the evidence is in law sufficient for the jury to convict the defendant of guilty of a homicide, the verdict accordingly rendered will not be disturbed by the courts because it was rendered upon apparently slight evidence, the weight and credibility being solely within the province of the jury.

2. **Criminal Law—Jurors—Special Venire—Challenge to Array—Challenge to Polls.**

   The ordering of a special venire where the prisoner is charged with a capital offense, and the manner in which it shall be summoned or drawn, when so ordered, whether selected by the sheriff under C. S., 2338, or drawn from the box under C. S., 2339, are both discretionary with the judge of the Superior Court, and unless an objection goes to the whole panel of jurors, it may not be taken advantage of by a challenge to the array, unless there is partiality or misconduct of the sheriff shown, or some irregularity in making out the list. The history of the prisoner's right of challenge to the polls, as changed by statute, with right of appeal, reviewed by STACY, J.

**3. Jurors—Challenge—Poll Classification.**

Peremptory challenges to individual jurors or challenges to the poll are now, generally speaking, divided into two classes, *propter defectum*, or the lack of some legal requirement, and *propter affectum*, which goes to the juror's bias or partiality of the juror, of which either party at the trial may take advantage. The principal challenges are stated by STACY, J.

**4. Same—Objections and Exceptions—Appeal and Error.**

Before the challenging party to the individual juror is entitled to have the adverse ruling of the trial court passed upon on appeal, it is required that he should have exhausted his peremptory challenges, and upon objection made in apt time.

**5. Same—Courts—Discretion.**

In the trial of capital felonies the juror must be challenged by the party when he is brought to the book to be sworn; and when it later appears that the juror is incompetent, it is discretionary with the trial judge not subject to review on appeal whether he will, under the circumstances, order a new trial.

**6. Evidence—Criminal Law—Stenographer—Witnesses—Former Trial.**

Where the prisoner is being again tried for a capital felony resulting from a former mistrial of the same offense, and on the second trial a witness whose testimony on her direct examination is claimed to be material to the defense cannot be procured, the testimony of the stenographer who had taken the evidence of this witness on the former trial is incompetent, upon the State's exception, when he can only give the substance of the direct examination, but not of the cross-examination, in the absence of his stenographic notes, which had been destroyed, with which to refresh his memory.

**7. Criminal Law—Homicide—Evidence—Instructions.**

Where there is no evidence upon the trial of a homicide for manslaughter, and the prisoner has been convicted of murder in the second degree, of which there was sufficient evidence, an exception to the charge to the jury on the ground that it restricted the jury to the consideration of the evidence of the greater offense, cannot be sustained on appeal.

APPEAL by defendant from *Stack, J.,* at November Term, 1923, of CUMBERLAND.

. Criminal prosecution, tried upon an indictment charging the defendant with murder in the first degree. He was convicted of murder in the second degree, and appeals from the judgment pronounced thereon.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*H. L. Brothers and Dye & Clark for defendant.*

STACY, J. The defendant was first tried at the March Special Term, 1923, before Judge Horton, but a mistrial was had at that term because

of the inability of the jurors to agree on a verdict. It appeared in the progress of the trial that W. C. Callahan, a deputy sheriff of Cumberland County, was shot on the morning of 24 February, 1923, and died about 4 o'clock that afternoon while in the Highsmith Hospital at Fayetteville. The deceased, about an hour before his death, fully conscious of impending dissolution, stated to his nurse, Miss Andrews, now Mrs. Wise, according to her testimony, that he knew Mr. Smith was the man who shot him. Upon the strength of this testimony Judge Horton issued a bench warrant for John Smith, and at the next term the grand jury returned a true bill against Joel Levy and John Smith, in which the two were charged jointly with the killing of W. C. Callahan.

At the August Term, 1923, Judge Sinclair presiding, the State's motion for a separate trial of the two defendants was denied, whereupon the case was continued.

At the November Term, 1923, the State took a *"nol. pros.* with leave" as to the defendant John Smith and used him on the trial as a witness against the defendant Joel Levy.

According to Smith's testimony he and another white man by the name of Toler brought 11 gallons of liquor in an automobile and put it out in the edge of a patch of woods not far from the defendant's house. After putting the liquor out, Toler drove off with his car while Smith went to notify Levy, a colored man, that the liquor was there. When Smith and Levy came back to the edge of the woods they found that the liquor had been moved, and they saw tracks leading across the sandy road from the place where it had been left. Levy insisted on following these tracks to find out what had become of the liquor. They had not gone far when they saw some one with it. Levy snatched a pistol from his pocket and fired two shots in rapid succession at the person with the liquor. This man was W. C. Callahan. Both shots took effect. Smith ran; and he and Toler came back to Fayetteville in Toler's car that afternoon. This evidence was denied in toto by the defendant, who set up an alibi and contended that he was not even present at the time of the shooting and knew nothing of it.

The testimony upon which the defendant was convicted, though positive and direct, may not be as convincing to us as it was to the jury. However, our inquiry is not directed to the weight of the evidence, but to its sufficiency to warrant a verdict. The jury alone may consider its credibility. Appreciating this fact, the defendant lodged no motion for dismissal of the action or for judgment as of nonsuit under C. S., 4643, after the State had produced its evidence and rested its case, and quite properly so.

On the trial the defendant noted several exceptions relating to the selection and impaneling of the jury, but we do not think any of them

can be sustained. The manner of summoning the special venire was likewise objected to by a challenge to the array. This is also untenable and it must be overruled. *S. v. Perry,* 44 N. C., 330; *S. v. Benton,* 19 N. C., 196 (opinion by GASTON, J.).

The ordering of a special venire in cases where the prisoner is charged with a capital offense, and the manner in which it shall be summoned or drawn, when so ordered, whether selected by the sheriff under C. S., 2338, or drawn from the box under C. S., 2339, are both discretionary with the judge of the Superior Court. *S. v. Terry,* 173 N. C., 761; *S. v. Brogden,* 111 N. C., 656; *S. v. Smarr,* 121 N. C., 669. And unless an objection goes to the whole panel of jurors, it may not be taken advantage of by a challenge to the array. *S. v. Hensley,* 94 N. C., 1021; *S. v. Parker,* 132 N. C., 1015; *S. v. Mallard,* 184 N. C., 667; *Moore v. Guano Co.,* 130 N. C., 229; *S. v. Stanton,* 118 N. C., 1182. In *S. v. Speaks,* 94 N. C., p. 873, it was said that "A challenge to the array can only be taken when there is partiality or misconduct in the sheriff, or some irregularity in making out the list." See, also, *S. v. Moore,* 120 N. C., 570.

Objections to individual jurors are made by challenges to the polls. This practice comes to us from the common law with the trial by jury itself, and has always been regarded essential to a fair determination of the issues involved. These challenges are of two kinds—peremptory and for cause.

In all capital cases, under our present practice, the prosecuting officer, on behalf of the State, is given the right to challenge peremptorily four jurors for each defendant, but he does not have the right to stand any of the jurors at the foot of the panel. C. S., 4634. The prisoner, or every person on joint or several trial for his life, is allowed to make a peremptory challenge of twelve jurors and no more. C. S., 4633.

In all other cases of a criminal nature, a peremptory challenge of two jurors is allowed in behalf of the State for each defendant; and every person on joint or several trial for an offense, other than capital, is given the right of challenging peremptorily, and without showing cause, four jurors and no more.

In all civil actions each side is allowed four peremptory challenges. C. S., 2331.

Blackstone, commenting upon this right of peremptory challenge, says in his Commentaries (4 Bl. Com., 353): "In criminal cases, or at least in capital ones, there is *in favorem vitœ* allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all, which is called a peremptory challenge; a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous. This is grounded on two

STATE *v.* LEVY.

reasons: (1) As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. (2) Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment, to prevent all ill consequences from which the prisoner is still at liberty, if he pleases, peremptorily to set him aside"; quoted with approval in *Lewis v. U. S.*, 36 L. Ed., 1014.

At common law challenges to the polls were divided into four classes: (1) *propter respectum,* as where the juror was a lord of Parliament, when he could be challenged by either side or by himself; (2) *propter defectum,* being a lack of some qualification required by law, such as residence, age, property, etc.; (3) *propter affectum,* on account of bias, suspicion of partiality, prejudice, or the like, and (4) *propter delictum,* for criminality, as where the juror had been convicted of an infamous crime.

But with us, speaking generally, challenges to the polls are usually divided into two classes only: *propter defectum,* which is the lack of some special legal requirement, and *propter affectum,* which goes to the juror's bias or partiality. Under this latter head the challenges may be for the principal cause or to the favor. *S. v. Benton,* 19 N. C., p. 212.

The principal challenges to the polls now recognized by our practice, and of which either side may take advantage at the trial, are briefly summarized as follows:

1. If the person called for jury service be not a *bona fide* resident of the county in which the trial is being held, or from which the jury is ordered to be summoned (C. S., 473), he may be stood aside for this reason. *S. v. White,* 68 N. C., 158; *S. v. Upton,* 170 N. C., 769.

2. If he be delinquent at the time of trial in the payment of his taxes for the preceding year, he may be excused on this ground. *S. v. Sherman,* 115 N. C., 773; *S. v. Davis,* 109 N. C., 780; *S. v. Gardner,* 104 N. C., 739; *S. v. Hargrave,* 100 N. C., 484; *Sellers v. Sellers,* 98 N. C., 13; *S. v. Haywood,* 94 N. C., 847.

3. If he have a suit pending and at issue in the Superior Court of the county, he may be challenged for this cause. *S. v. Hopkins,* 154 N. C., 622; *S. v. Spivey,* 132 N. C., 989; *Hodges v. Lassiter,* 96 N. C., 351; *S. v. Vick,* 132 N. C., p. 997.

4. If he be a minor, or less than 21 years of age, he is not qualified to sit as a juror. *S. v. Griffice,* 74 N. C., 316; *S. v. Lambert,* 93 N. C., 618.

5. If he be an atheist, or deny the existence of Almighty God, he is presumed to be insensible to the obligations of an oath. *S. v. Davis,* 80 N. C., 412; *McClure v. State,* 1 Yerger (Tenn.), 206. See, also, Const., Art. VI, sec. 8, and *Shaw v. Moore,* 49 N. C., 25.

6. If he be related by blood or marriage to any of the parties within the ninth degree, he would be subject to challenge. *S. v. Potts,* 100 N. C., p. 457; *S. v. Perry,* 44 N. C., 330; *S. v. Baldwin,* 80 N. C., 390; *S. v. Ketchey,* 70 N. C., 621; *S. v. Shaw,* 25 N. C., 532.

7. If he be wanting either in intelligence or in good moral character, an objection to his competency on either one of these grounds should be sustained. This would include the *propter delictum* as known to the common law. *S. v. Peoples,* 131 N. C., 788; *S. v. Sherman,* 115 N. C., 774; *S. v. Edens,* 85 N. C., 524.

8. If he be of the same society or corporation with either party, when such society or corporation is interested in the litigation, or if he be the tenant or "within the distress" of either party, or if he have an action, implying malice, depending between himself and either party, or if he be the master, servant, counselor, steward or attorney for either party, he may be challenged upon any one or more of these grounds. Such was the rule at common law. 16 R. C. L., p. 256; *Oliphant v. R. R.,* 171 N. C., 303; *Bank v. Oil Mills,* 150 N. C., 683; *S. v. Sultan,* 142 N. C., 569; *S. v. Barber,* 113 N. C., 711; Thompson and Merriam on Juries, p. 167.

9. If he be prejudiced or biased to such an extent that he cannot render a fair and impartial verdict in the case he would be disqualified on objection to sit as a juror. *S. v. Vann,* 162 N. C., 534; *S. v. Vick,* 132 N. C., 995; *Brittain v. Allen,* 13 N. C., 120. See *S. v. Harris,* 69 W. Va., 244, as reported in 50 L. R. A. (N. S.), p. 933, where many authorities are collated and reviewed in a valuable note by the annotator.

10. In addition to the above disqualifications, or grounds for objection, if the person called be a tales juror, he would be subject to challenge if he be not a freeholder within the county, or if he has served in the same court as grand, petit or tales juror within two years next preceding such term of court. C. S., 2321. *Hale v. Whitehead,* 115 N. C., 29; *S. v. Sherman,* 115 N. C., 773; *S. v. Hargrave,* 100 N. C., 484; *S. v. Whitfield,* 92 N. C., 831; *S. v. Brittain,* 89 N. C., 481; *S. v. Whitley,* 88 N. C., 691; *S. v. Cooper,* 83 N. C., 671; *S. v. Howard,* 82 N. C., 623; *S. v. Ragland,* 75 N. C., 12.

11. The trial courts have experienced some difficulty in passing upon the qualifications of special veniremen, by reason of the apparent conflict in the following statutes:

C. S., 2326, provides: "It shall not be a valid cause of challenge that a juror called from those whose names are drawn from the box is not a freeholder or has served upon the jury within two years prior to the court at which the case is tried. In other respects the cause of challenge shall be the same as now provided by law, and nothing herein shall modify any law authorizing jurors to be summoned from counties other than the county of trial."

C. S., 4635, provides: "In the trial of all criminal cases, where a special venire shall be ordered, the same causes of challenge to the jurors summoned on the special venire shall be allowed as exist to tales jurors."

"Persons· qualified to act as jurors in said· county" is the designation given to those who are to be summoned as special veniremen under C. S., 2338. And it is suggested by the Attorney-General that C. S., 4635, should be construed to apply to cases where the judge of the Superior Court exercises his discretion under C. S., 2338, and issues a special writ of *venire facias* to the sheriff of the county, commanding him to summon such number of persons qualified to act as jurors in the county as the judge may deem sufficient, leaving the express provisions of C. S., 2326, to apply to jurors drawn from the box, under C. S., 2339, and other statutes. If this interpretation be correct—and it seems to accord with well-established rules of statutory construction—it follows that special veniremen, whose names have been drawn from the box, should be considered as standing on the same footing with regular jurors, while those whose names are not drawn from the box should be considered as standing on the same footing with tales jurors. *S. v. Williams,* 185 N. C., p. 664. It may be well to note that the present statutes, relating to the subject in hand, are slightly different from what they were when the following cases were decided: *S. v. Carland,* 90 N. C., 668; *S. v. Whitfield,* 92 N. C., 831; *S. v. Kilgore,* 93 N. C., 533; *S. v. Starnes,* 94 N. C., 973; *S. v. Powell,* 94 N. C., 965; *S. v. Cody,* 119 N. C., 908.

It should be observed that no ruling relating to the qualification of jurors and growing out of challenges to the polls will be reviewed on appeal, unless the appellant has exhausted his peremptory challenges and then undertakes to challenge another juror. *Oliphant v. R. R.,* 171 N. C., 303. His right is not to select but to reject jurors; and if the jury as drawn be fair and impartial, the complaining party would be entitled to no more upon a new trial, and this he has already had on the first trial. *S. v. Sultan,* 142 N. C., 569; *S. v. English,* 164 N. C., 497;

*S. v. Bohanon,* 142 N. C., 695; *Sutton v. Fox,* 55 Wis., 531. Hence the ruling, even if erroneous, would be harmless. *S. v. Cockman,* 60 N. C., 485.

Challenges to the polls, or objections to individual jurors, must be made in apt time, or else they are deemed to be waived. It is too late after the trial has been concluded. In capital cases a challenge *propter defectum* or *propter affectum* should be made as the juror is brought to the book to be sworn and before he is sworn. *S. v. Davis,* 80 N. C., 412. The fact that an incompetent juror was permitted to sit on the case does not vitiate the verdict. *S. v. Upton,* 170 N. C., p. 771. But when the incompetency is not discovered until after the verdict, it is then discretionary with the judge presiding as to whether he will, under the circumstances, order a new trial, and his action in this respect is final. *S. v. Lambert,* 93 N. C., 618.

The defendant's chief assignment of error, or the one most strongly urged on the argument and in his brief, is the exception addressed to the ruling of the court in excluding the testimony of Mrs. Wise, *nee* Miss Andrews, the nurse, to the effect that the deceased, about an hour before his death, when fully conscious of impending dissolution, stated to her that he knew Mr. Smith was the man who shot him. This evidence was given at the first trial and taken down by the court stenographer, and the witness duly cross-examined in regard to the dying declaration of the deceased. At the time of the second trial, Mrs. Wise was out of the State and she could not be obtained as a witness. The transcript of her testimony, given on the former trial, did not show the cross-examination. The stenographer who took the evidence of the witness "stated that part of his notes had been destroyed by rats or lost; that he could testify as to what she said on her direct examination, but did not feel that he could testify to the substance of the cross-examination, and he didn't think that he could find a sufficient amount of his notes from which he could obtain the cross-examination of the absent witness." Upon objection by the State to the introduction of only the direct examination of the absent witness, and without having present in court her cross-examination, the evidence was excluded. This ruling is in accord with the authorities on the subject. *S. v. Maynard,* 184 N. C., 653; *Boney v. Boney,* 161 N. C., 621; 8 R. C. L., 217. Though in Pennsylvania it appears that the absence of the cross-examination is not always held to be fatal to the admission of such evidence. "The notes of counsel, showing what a deceased witness testified to on a former trial between the same parties, touching the same subject-matter, are evidence when proved to be correct in substance, although the counsel did not recollect the testimony independent of his notes, and although he did not recollect the cross-examination." *Lewis, C. J.,* in *Rhine v.*

*Robinson,* 3 Casey, 30; followed and quoted with approval in *Phila. and Reading R. R. v. Spearen,* 11 Wright, 306; and *Brown v. Commonwealth,* 73 Penn. St., 321.

But the better rule, according to the weight of modern authority, is to the effect that unless the witness be able to give in substance the whole of what was said on the former trial by the absent or deceased witness, or at least the whole of what was said concerning the particular subject of inquiry, including the cross-examination as well as the direct examination, such testimony may not be received in evidence. 10 R. C. L., 971. See exhaustive opinion of *Drummond, J.,* in *U. S. v. Macomb,* 5 McLean's Reports, 286.

The question is not presented on the present record as to whether this evidence would have been competent under the doctrine announced in *S. v. Lane,* 166 N. C., 333, even if the witness could have stated in substance the whole of what was. said by the absent witness on the former trial.

Defendant earnestly insists that if he could have had the benefit of this evidence in connection with his own testimony tending to establish an alibi, a different verdict would have been rendered. Possibly so, but our inquiry is limited to errors of law, and we have found none on the instant record.

The defendant also excepts because the court in its instructions excluded from the jury any and all consideration of the charge of manslaughter, and restricted their deliberations to the questions of murder in the first and second degrees and acquittal. In this there was no error. The record discloses. no evidence upon which a verdict of manslaughter could have been rendered. *S. v. White,* 138 N. C., 722; *S. v. Johnson,* 161 N. C., 264. In this respect the case is unlike *S. v. Merrick,* 171 N. C., 788, so strongly relied upon by the defendant.

The remaining exceptions present no new or novel point of law. The record is free from any prejudicial or reversible error in law.

No error.